**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
BERNARD CARL,

                         Plaintiff,

        - against -

RICHARD EDWARDS, JOHN HAWKINS,
SPECIALIST CARS OF MALTON LIMITED,
GRAEME SCHOLES, LEFT HAND DRIVE LTD.,
PAUL SWEENEY, PHS CONSULTANTS,
ANDREW HOWARTH, CHRISTOPHER WILLIAMS,
TREVOR SMITH, FOOS CHINA TRADING,
VIKASH LIMBANI, LANDMARK CAR CO.,
JEFFREY PATTINSON, THOMAS HAMANN,
and JOHN DOES 1-5,

                         Defendants.
----------------------------------------------------------X

                         **MEMORANDUM**
                         **AND ORDER**

                    CV 16-3863 (ADS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    **PRELIMINARY STATEMENT**

      High dollar vintage car collecting sets the backdrop for the case presently before the

Court. The cast of characters in this international activity spans the globe, encompassing

individuals and entities residing or doing business in the United States, the United Kingdom and

Hong Kong. *See* Complaint ("Compl.") ¶¶ 3-42 [DE 1]. Plaintiff Bernard Carl ("Plaintiff") is

"an avid collector of vintage sports and racing automobiles." *Id.* ¶ 4. In the fall of 2013, Carl

"was persuaded to purchase by Defendant, [Richard] Edwards . . . several vintage automobiles

. . . with the participation and assistance of certain of [Edwards'] co-conspirators." *Id.* ¶ 77.

      What ultimately happened to some of those vehicles is the subject of this litigation.

Before the Court at this time is Plaintiff's motion seeking to compel discovery responses from

the following Defendants: Richards Edwards (*pro se*), Christopher Williams (*pro se*), John

Hawkins (*pro se*), Specialist Cars of Malton, Ltd., Graeme Scholes (*pro se*) and Left Hand Drive, Ltd., Thomas Hamann, Jeffrey Pattinson and Landmark Car Co. *See* DE 80. None of the Defendants, except for Jeffrey Pattinson and Landmark Car Co., filed opposition to the motion. *See* DE 82.

## II.     FACTUAL BACKGROUND

Plaintiff ultimately entered into a brokerage agreement with Defendant Edwards which provided that Edwards could "propose a sale to a potential buyer to Plaintiff for approval" but otherwise could not "'accept [any such] offers . . . on [Plaintiff's] behalf,' and that any agreement to sell one of the cars not executed by Plaintiff 'would not be binding upon [Plaintiff.]'" *Id.* ¶¶ 79-85. In addition, the agreement further stipulated that "'any vehicle bought with [Plaintiff] Carl's funds shall remain the sole and exclusive property of [Plaintiff] Carl until sold and paid for…'" *Id.* ¶ 83. Significantly, "if a car subject to the Agreement were not sold within 90 days after its acquisition by Plaintiff (or such later date as Plaintiff might approve), any right Defendant, Edwards, might have had to represent the car to potential buyers would terminate, and Plaintiff would owe no further obligation to Defendant, Edwards, or any party claiming through Defendant, Edwards, with regard to that car." *Id.* ¶ 86.

Relying on the brokerage agreement and based upon Edwards' recommendation, "[b]etween November 2013 and November 2014, Plaintiff purchased approximately seventeen (17) vintage automobiles. . . ." *Id.* ¶ 94. Of these 17 vehicles, eight are embroiled in this litigation and include a Ferrari F40, Porsche 2.7 RS Touring, Lamborghini Miura, Porsche 2.7RS Lightweight, Porsche 2.7RS Touring, Porsche 959 Komfort, Ferrari 365 GT 2+2 and an Alfa Romeo Montreal. *Id.* ¶ 95. In order to ensure these cars remained secure, Plaintiff insisted they be housed at "an established vintage car dealership until they were sold." *Id.* ¶ 96. Ultimately,

Plaintiff settled on Defendant Specialist Cars of Malton Limited ("Specialist Cars") which was owned and operated by Defendant John Hawkins ("Hawkins").

During the evening hours of October 12, 2015 — less than one day before a hearing was to take place before the High Court in the United Kingdom concerning the ownership of these cars — the eight referenced automobiles were removed from Specialist Cars' warehouse facility by Defendant Edwards. *Id.* ¶¶ 104-106. Plaintiff asserts that Edwards "repeatedly represented that he removed the aforementioned [cars] from the facility" and claims that Co-Defendants Andrew Howarth and Vikash Limbani "have acknowledged assisting [ ] Edwards[ ] in removing and transporting one or more of the Missing Cars . . . on October 12 and 13, 2015." *Id.* ¶¶ 111-112. Further adding to the intrigue, Plaintiff claims that Edwards, upon taking possession of these eight vehicles, began selling them off to Defendant Trevor Smith, an "'underworld' figure," who allegedly procured the cars as an agent from Defendant Foos China Trading which ultimately purchased the cars for approximately $1.2 million. *Id.* ¶¶ 113-123. According to Plaintiff, the purchase price amounted to only a fraction of the fair market value of these vehicles and that, in any event, Edwards' motive in offloading the vehicles at such a cut-rate price was because "he needed the proceeds . . . to pay his pre-existing debts," which included payments to Defendants Thomas Hamann and Landmark Car Co. *Id.* ¶¶ 123-125. Despite negotiations between Plaintiff's prior counsel and Edwards, Plaintiff was not able to recover these vehicles or the money he invested to procure them. *Id.* ¶¶ 128-169. Further, Plaintiff asserts that in addition to the eight cars that were misappropriated from Specialist Cars' warehouse, Edwards and certain other Defendants "converted for the[ir] own use and benefit a Porsche Speedster . . . belonging to Plaintiff . . . ." *Id.* ¶ 169.

Based upon the foregoing allegations, Plaintiff has interposed claims predicated upon the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), (d) as well as common law claims of civil conspiracy, fraudulent misrepresentation, fraud, trespass to chattels, unjust enrichment and an accounting. *Id.* ¶¶ 637-713. Plaintiff seeks compensatory damages in the amount of $8,003,935.50, including treble damages on Plaintiff's RICO claims, punitive damages, an accounting as well as attorney's fees and costs. *See id.* (Prayer for Relief).

III. **RELEVANT PROCEDURAL HISTORY**

Following the filing of Plaintiff's Complaint, the Court conducted an Initial Conference which was attended by some, but not all, of the Defendants in this action. *See generally* DE 47. Although several Defendants sought a stay of discovery through the filing of various motions to dismiss based upon lack of personal jurisdiction and *forum non-conveniens* grounds, the Court declined the stay, pointing out that "this case does not fall within the pantheon of 'extraordinary cases' contemplated by the Second Circuit for a full stay of discovery." *Id.* ¶¶ 2-3. However, as a result of the representations made during the conference, the Court: (1) stayed discovery with regard to all RICO allegations; and (2) limited discovery "solely to the jurisdictional issue." *Id.* ¶ 4. The Court specifically instructed Plaintiff's counsel that "any document requests and/or interrogatories are to be narrowly tailored to that issue." *Id.* In light of the circumscribed nature of the jurisdictional discovery permitted by the Court, a limited Scheduling Order was entered whereby all responses to Plaintiff's request for documents and interrogatories were due by November 30, 2016 and any letter motions seeking court intervention were to be filed by January 6, 2017. *Id.* Subsequently, on September 23, 2017, Judge Spatt denied, without prejudice, all pending motions to dismiss, providing all Defendants leave to renew "following the close of jurisdictional discovery." DE 50.

On January 6, 2017, Plaintiff filed the instant motion seeking to compel discovery responses from the specific Defendants identified at the outset of this Order, including several *pro se* defendants, certain corporate defendants and an individual defendant represented by counsel. None of these Defendants, except for Jeffrey Pattinson and Landmark Car Co., filed opposition to the motion. *See* DE 82.

## IV. DISCUSSION

### A. Defendant's Motion to Compel Jurisdictional Discovery

#### 1. *Applicable Law*

##### i. **Federal Rule 26**

Rule 26(b)(1), as amended on December 1, 2015, recognizes that "[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case." Rule 26 Advisory Committee Notes to 2015 Amendments; *see Sibley v. Choice Hotels Int'l*, No. CV 14-634, 2015 WL 9413101, at *2 (E.D.N.Y. Dec. 22, 2015) (recognizing that "the current version of Rule 26 defines permissible discovery to consist of information that is, in addition to being relevant 'to any party's claim or defense,' also 'proportional to the needs of the case.'") (internal citation omitted); *Denim Habit, LLC v. NJC Boston, LLC*, No. 13 CV 6084, 2016 WL 2992124, at *3 (E.D.N.Y. May 23, 2016). Notably, although Rule 26 still permits a wide range of discovery based upon relevance and proportionality, the "provision authorizing the court . . . to order discovery of any matter relevant to the subject matter involved in the action" has been eliminated. Rule 26 Advisory Committee Notes to 2015 Amendments; *see Sibley*, 2015 WL 9413101, at *2 (internal citation omitted). The rationale behind the elimination of this phrase is the finding that it "has been used by some, incorrectly, to define the scope of discovery." Rule 26 Advisory Committee Notes to 2015 Amendments. Thus, Rule

26(b)(1), as amended, although not fundamentally different in scope from the previous version "constitute[s] a reemphasis on the importance of proportionality in discovery but not a substantive change in the law." *Vaigasi v. Solow Mgmt. Corp.*, No. 11 CIV 5088, 2016 WL 616386, at *13 (S.D.N.Y. Feb. 16, 2016); *see Robertson v. People Magazine*, No. 14 Civ. 6759, 2015 WL 9077111 at *2 (S.D.N.Y. Dec. 16, 2015) ("[T]he 2015 amendment [to Rule 26] does not create a new standard; rather it serves to exhort judges to exercise their preexisting control over discovery more exact-ingly.").

Notwithstanding the foregoing principles, however, "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Barbara v. MarineMax, Inc.*, No. 12 Civ. 368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) (citing *Wells Fargo Bank, N.A. v. Konover,* No. 05 Civ. 1924, 2009 WL 585430, at *5 (D. Conn. Mar. 4, 2009)); *Evans v. Calise*, No. 92 Civ. 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994)); *Denim Habit, LLC*, 2016 WL 2992124, at *3. In general, "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina,* 695 F.3d 201, 207 (2d Cir. 2012) (citing *In re Agent Orange Prod. Liab. Litig.,* 517 F.3d 76, 103 (2d Cir. 2008)); *Barbara*, 2013 WL 1952308, at *3 ("Courts afford broad discretion in magistrates' resolution of discovery disputes."); *Coggins v. Cnty. of Nassau*, No. 07 Civ. 3624, 2014 WL 495646, at *2 (E.D.N.Y. Feb. 6, 2014) (A district court has "broad discretion to determine whether an order should be entered protecting a party from disclosure of information claimed to be privileged or confidential.") (internal quotation omitted); *see also Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) ("[m]otions to compel are left to the court's sound discretion."); *Liberty Mut. Ins. Co. v. Kohler*

*Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.").

ii.     **Federal Rule 33**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, "a party may serve on any other party no more than 25 written interrogatories. . . ." Fed. R. Civ. P. 33(a)(1); *see Pegoraro v. Marrero* 281 F.R.D. 122, 128 (S.D.N.Y. 2012). Interrogatories "may relate to any matter that may be inquired into under Rule 26(b) . . . [and] is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact. . . ." *Id*. 33(a)(2); *see Trueman v. New York State Canal Corp.*, No. 1:09-CV-049, 2010 WL 681341, at *2 (N.D.N.Y. Feb. 24, 2010) ("Interrogatories, like other discovery devices, may inquire into any discoverable matter, including facts and contentions."). The general aim of this discovery device is to "expeditiously narrow the scope of the litigation, reduce the element of surprise, serve as admissions for trial, and in a significant matter avoid unnecessary discovery and minimize expense." *Trueman*, 2010 WL 681341, at *2. To that end, the responding party is required to answer each interrogatory "separately and fully under oath." Fed. R. Civ. P. 33(b)(3). Thus, the Rule explicitly requires the responding party to "provide the best answer they can based upon information within their possession." *Trueman*, 2010 WL 681341, at *2 (citing Fed. R. Civ. P. 33(b)(3)).

In order to ensure that each interrogatory is answered "separately" and "fully," *see* Fed. R. Civ. P. 33(b)(3), the responding party is required "to make an inquiry and obtain information to answer the interrogatories which would include obtaining the information to fully and completely answer the interrogatories. . . ." *Upstate Shredding, LLC v. Ne. Ferrous, Inc.*, No. 312 CV 1015, 2016 WL 865299, at *8 (N.D.N.Y. Mar. 2, 2016); *see Zanowic v. Reno*, No.

97 Civ. 5292, 2000 WL 1376251, at *3 n.1 (S.D.N.Y. Sept. 25, 2000) ("In responding to interrogatories . . . a party is under a duty to make a reasonable inquiry concerning the information sought in the interrogatories, and a party's failure to describe his efforts to obtain the information sought . . . renders his responses insufficient."); *Braham v. Perelmuter*, No. 3:15 CV 1094, 2016 WL 1305118, at *3 (D. Conn. Apr. 1, 2016); *In re Auction Houses Antitrust Litig.*, 196 F.R.D. 444, 445 (S.D.N.Y. 2000) ("A party served with interrogatories is obliged to respond . . . not only by providing the information it has, but also the information within its control or otherwise obtainable by it.").  Where a party, despite conducting a diligent inquiry, is nevertheless unable to provide a responsive answer, any efforts utilized should be set forth in detail to ensure a sufficient response is interposed.  *Id.*; *Zanowic*, 2000 WL 1376251, at *3 n.1.  Further, "an answer to an interrogatory must be completed within itself and, it should be in a form that may be used at trial . . . [Therefore] [r]eference to depositions, other answers to the interrogatories, other document production, the complaint itself, or any other documents are improper and thus unresponsive."  *Trueman*, 2010 WL 681341, at *3; *Poulio v. Paul Arpin Van Lines, Inc.*, 2004 WL 1368869, at *2 (D. Conn. June 14, 2004) (noting that other courts have held that a party may not incorporate deposition testimony or rely upon future depositions in lieu of complete responses to interrogatories); *In re Savitt/Adler Litig.*, 176 F.R.D. 44, 49 (N.D.N.Y. 1997); *Davidson v. Goord*, 215 F.R.D. 73, 77 (W.D.N.Y. Jan. 30, 2003); Moore Federal Practice §§ 33.101, 33.103, & 33.106.  In addition, "as new information comes into its possession, the responding party has a continuing duty to supplement their responses."  *Trueman*, 2010 WL 681341, at *2 (citing Fed. R. Civ. P. 26(e)(1)).

Although a responding party is permitted to object to an interrogatory that it deems to be improper, the grounds for any such objection "must be stated with specificity.  Any ground not

stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4); *see Pegoraro*, 281 F.R.D. at 128. It follows that "[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy," while producing "no documents and answer[ing] no interrogatories . . . are a paradigm of discovery abuse." *Jacoby v. Hartford Life & Accident Ins. Co.*, 254 F.R.D. 477, 478 (S.D.N.Y. 2009); *Davidson*, 215 F.R.D. at 77 ("Generalized objections that a discovery request is burdensome without resort to specific reasons is similarly insufficient to justify a refusal to respond.") (quoting *Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 592–93 (W.D.N.Y. 1996)). In order to effectively resist providing a response to an interrogatory, a party must show "specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive. . . by submitting affidavits or offering evidence revealing the nature of the burden." *Pegoraro*, 281 F.R.D. at 128–29 (quoting *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)).

### iii.    Federal Rule 34

Rule 34(a) of the Federal Rules of Civil Procedure delineates the type of items that a requesting party may "inspect, copy, test or sample" when such items are in the "responding party's possession, custody, or control[.]" Fed. R. Civ. P. 34(a). The overall scope of Rule 34 is broad and includes "information that is fixed in a tangible form and to information that is stored in a medium from which it can be retrieved and examined. At the same time, a Rule 34 request for production of 'documents' should be understood to encompass, and the response should include, electronically stored information. . . ." Fed. R. Civ. P. 34 (Advisory Committee Notes

to 2006 Amendments).  Rule 34(b)(2)(E) governs the manner in which production of documents

or electronically stored information ("ESI") must be made.  The Rule states as follows:

> **(E)** *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> **(i)** A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to
> the categories in the request;
>
> **(ii)** If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> **(iii)** A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E).  By it terms, Rule 34(b)(2)(E)(i) and (ii), concerning the production

of documents or ESI respectively, permits the producing party, unless otherwise ordered by the

Court, to choose which method to produce the items sought by the requesting party.  *See* Rule

34(b)(2)(E)(i) ("A party must produce documents as they are kept in the usual course of business

*or* must organize and label them to correspond to the categories in the request.") (emphasis

added); Rule 34(b)(2)(E)(ii) ("a party must produce [ESI] in a form or forms in which it is

ordinarily maintained *or* in a reasonably usable form or forms") (emphasis added).  Thus, "under

the provisions of Rule 34(b)(2) a responding party clearly controls the manner in which

production will occur, and specifically which of the two prescribed methods of production will

be employed."  *Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 334 (N.D.N.Y. 2008); *see*

*Hill v. Stewart*, No. 10CV538S, 2011 WL 4439445, at *5 (W.D.N.Y. Sept. 23, 2011)

("[D]efendants are not obligated under the Federal Rules to organize their records to suit

plaintiff's discovery demands and plaintiff cites no authority to the contrary. Rule 34(b)(2)(E) gives the responding party the option either to produce the documents in the manner they usually keep the records or produce them in the categories sought; that rule does not require the responding party to alter their record keeping to meet the movant's discovery categories.").

With regard to documents produced in accordance with Rule 34(b)(2)(E)(i), where a producing party elects to produce such documents as they are kept in the usual course of business, a party "must do more than merely represent to the court that the party complied with Rule 34(b)(2)(E)(i)." *Distefano v. Law Offices of Barbara H. Katsos, PC*, No. CV 11-2893, 2013 WL 1339536, at *5 (E.D.N.Y. Mar. 29, 2013). Instead, courts generally require the party to explain how its documents are organized in the ordinary course of business and what steps the party took to search and produce the documents. *Id. see, e.g.*, *Century Jets Aviation LLC v. Alchemist Jet Air LLC*, No. 08–CV–9892, 2011 WL 724734, at *3–4 (S.D.N.Y. Feb. 8, 2011); *Synventive Molding Solutions, Inc. v. Husky Injection Molding Sys., Inc.*, 262 F.R.D. 365, 371 n. 9 (D. Vt. 2009); *Pass & Seymour, Inc.*, 255 at 333–38 (N.D.N.Y. 2008) (collecting cases); *see also Schrom v. Guardian Life Ins. Co. of Am.*, No. 11 CIV. 1680, 2012 WL 28138, at *6 (S.D.N.Y. Jan. 5, 2012) ("Where massive numbers of documents are involved, it may be necessary for the producing party to provide a complete explanation of its information management structure if it wishes to produce those documents in the manner that they are ordinarily stored."). However, the "rule does not require the responding party to alter their record keeping to meet the movant's discovery categories. *Hill*, 2011 WL 4439445, at *5; *see In re Adelphia Communications Corp.*, 338 B.R. 546, 551 (S.D.N.Y. 2005) (citing cases). Further, "[t]he most obvious means of complying with the requirement of Rule 34(b) to produce documents as they are kept in the usual course of business is to permit the requesting party to

inspect the documents where they are maintained, and in the manner in which they are organized by the producing party." *Pass & Seymour, Inc.*, 255 F.R.D. at 336.

### 2. *Application to the Facts*

As an initial matter, Plaintiff's motion suffers from various procedural defects which in themselves would justify its denial.

*First*, the motion fails to comply with Local Civil Rule 37.1 and is capable of being rejected on that basis alone. Local Civil Rule 37.1 states that

> Upon any motion or application involving discovery or disclosure requests or responses under Fed. R. Civ. P. 37, the moving party shall specify and quote or set forth verbatim in the motion papers each discovery request and response to which the motion or application is addressed. The motion or application shall also set forth the grounds upon which the moving party is entitled to prevail as to each request or response. Local Civil Rule 5.1 also applies to the motion or application.

Local Civil Rule 37.1. *See also* Local Rule 5.1. Therefore, to comply with these Rules, the movant must first list verbatim the document request or interrogatory which was served on opposing counsel, followed directly by opposing counsel's verbatim response to the particular request, followed immediately by the particularized objection(s) counsel is raising and the basis for the objections (*i.e.*, why the response is overly broad, deficient, non-responsive, etc.). Counsel is expected to refer to relevant case law to support his/her position/objection as to the respective discovery demand. Compliance with Rule 37.1 is critical in ensuring that the Court does not waste judicial resources by having to constantly flip-flop between documents in order to locate the specific interrogatory or discovery request at issue, the opposing party's answer, the nature of each party's arguments and the relevant case law cited in support of each party's position.

*Second*, Plaintiff did not include a copy of the demands at issue in conjunction with the filing of this motion (which otherwise would not have been necessary in the first instance had counsel complied with Rule 37.1). Therefore, counsel essentially leaves a vacuum as to the context of the discovery demands, putting the Court at a disadvantage.[1]

*Third*, Plaintiff provides no case law supporting his individual demands

*Fourth*, the only reason the Court chooses to address the substance of this motion is the passage of time since the motion was filed and the procedural posture of this case. Counsel are hereby on notice that the Court will not accept future motions which fail to comply with the Federal Rules, the Local Civil Rules and this Court's Individual Rules.

On October 17, 2016, Plaintiff, in accordance with the deadlines set forth in this Court's Scheduling Order, *see* DE 47, served his discovery demands and interrogatory requests upon Defendants. *See* DE 80. Despite evidence of such service, *see id.*, Exs. 1-10, the following Defendants have, to date, failed to serve any responses: Richard Edwards (*pro se*), Christopher Williams (*pro se*), Graeme Scholes (*pro se*), Left Hand Drive, Ltd. and Thomas Hamann (the "Non-Responding Defendants"). DE 80.[2] Likewise, although Jeffrey Pattinson and Landmark Car Co. filed a timely opposition, Plaintiff asserts that specific responses remain deficient. *See* DE 80.

---

[1] Although Plaintiff did file his discovery demands on October 17, 2016, *see* DE 57-67, the Court responded that discovery requests and responses should not be filed on ECF unless annexed to a motion. As such, those filings do not operate as a substitute for the attachment of the specific demands and responses at issue in the pending motion to compel.

[2] When no responses were interposed by John Hawkins (*pro se*) and Specialist Cars of Malton, Ltd., Plaintiff requested a Certificate of Default as to each of these Defendants on May 1, 2017. *See* DE 89, 90. On May 2, 2017, the Clerk issued the requested Certificates in accordance with Rule 55(a) of the Federal Rules of Civil Procedure. *See* DE 91, 92. As such, the Court deems the motion moot with respect to these Defendants.

Turning first to the Non-Responding Defendants, "there is consistent authority that a failure to serve timely responses to interrogatories and document requests serves as a waiver of objections. *Senat v. City of N.Y.*, 255 F.R.D. 338, 339 (E.D.N.Y. 2009) (citing Fed. R. Civ. P. 33(b)(4)); *see Gesualdi v. Interstate Payroll Co., Inc.*, No. 14CV6780, 2016 WL 737909, at *2 (E.D.N.Y. Feb. 22, 2016); *Stabile v. United Recovery Servs., L.P.*, No. 11-CV-1152, 2011 WL 6448189, at *2 (E.D.N.Y. Dec. 22, 2011) ("[D]efendants' failure to timely respond results in a waiver of all objections as to the interrogatories and all objections to the document demands except those based on privilege."); *Labarbera v. Absolute Trucking, Inc.*, No. CV 08-4581, 2009 WL 2496463, at *1 (E.D.N.Y. Aug. 12, 2009); *Russo–Lubrano v. Brooklyn Federal Sav. Bank*, No. CV–06–672, 2007 WL 2126086, at *2 (E.D.N.Y. July 23, 2007); *Carr v. Queens–Long Island Medical Group, P.C.*, Nos. 99 Civ. 3706, 02 Civ. 1676, 2003 WL 169793, at *5 (S.D.N.Y. Jan. 24, 2003); *Berube v. Great Atlantic & Pacific Tea Co.*, No. 3:06 cv 197, 2006 WL 3826702, at *5 (D. Conn. Nov. 30, 2006); *Techsearch Services, Inc. v. Gorman*, No. 97 Civ. 7641, 1999 WL 33024, at *1–2 (S.D.N.Y. Jan. 21, 1999). However, "the Court may, in its discretion, excuse [a party's] delay" in serving timely responses to discovery demands. *Gesualdi*, 2016 WL 737909, at *2 (quoting *Melendez v. Greiner*, No. 01 Civ. 7888, 2003 WL 22434101, at *2 (S.D.N.Y. Oct. 23, 2003)) (alteration in original); *see also Davis v. City of New York*, No. 86 Civ. 6345, 1988 WL 42189, at *2 (S.D.N.Y. Apr. 28, 1988) ("It is well settled that the protections and sanctions found in the discovery rules are not absolute and contemplate use of judicial discretion.").

Here, the Non-Responding Defendants have failed to file timely responses to Plaintiff's document demands and interrogatory requests by the November 30, 2016 deadline set forth in this Court's Scheduling Order. DE 47. In addition, none of these Defendants sought leave for an

extension of time within which to respond to Plaintiff's demands.  In this regard, the Court points

out that the importance of [a scheduling order] to a district court's effective control and

management of a case, cannot be overstated."  *Kassim*, 221 F.R.D. at 365; *see, e.g.*, *Public*

*Citizen v. Liggett Group*, 858 F.2d 775, 790 (1st Cir. 1988), *cert. denied*, 488 U.S. 1030, 109 S.

Ct. 838, 102 L. Ed. 2d 970 (1989) ("[Scheduling] orders and their enforcement are regarded as

the essential mechanism for cases becoming trial-ready in an efficient, just, and certain manner.

The control of these schedules is deliberately reposed in the court, and not in counsel, so that this

end may be achieved.").  Consequently, a court's scheduling order, issued in accordance with

Rule 16, "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by

counsel without peril."  *Kassim*, 221 F.R.D. at 365.  In order to ensure that litigants give proper

deference to a scheduling order, Rule 16(f) provides that "[o]n motion or on its own, the court

may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or

attorney . . . fails to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1); *see Allen*

*v. Dairy Farmers of Am., Inc.*, No. 5:09-CV-230, 2013 WL 211303, at *2 (D. Vt. Jan. 18, 2013)

("The Federal Rules of Civil Procedure allow a court to impose sanctions if a party "fails to obey

a scheduling or other pretrial order.") (quoting Fed. R.Civ. P. 16(f)(1)(C)); *see M.B. v. CSX*

*Transp., Inc*., 299 F.R.D. 341, 345 (N.D.N.Y. 2014)); *Arnold*, 232 F.R.D. at 67 ("The Federal

Rules of Civil Procedure provide that failures to comply with case management orders entered

by the court pursuant to Rule 16(b) are subject to the sanctions available to courts to enforce its

orders including the authority to make such orders as are just, as well as those available under

Rule 37(b)(2)(B), (C) and (D).") (internal quotations omitted); *Neufeld v. Neufeld*, 172 F.R.D.

115, 118 (S.D.N.Y. 1997); *see also* Rule 37(b)(2)(A)(ii)-(vii) (setting forth sanctions that may be

imposed for failure to comply with the court's scheduling order).

Based upon the Non-Responding Defendants' disregard of this Court's Scheduling Order, and in light of the fact that these Defendants have not filed any opposition papers in response to the instant motion (which could have provided the Court with a basis for the failure to respond), the Court hereby orders the Non-Responding Defendants to provide full and complete responses to Plaintiff's discovery demands and interrogatories previously served on October 17, 2016. **These responses (and/or arrangements to inspect documents) must be served upon the Plaintiff by October 26, 2017**. Normally, the Court would require a shorter time, but in light of the fact that these individuals and entities are outside the United States, the Court is giving a 30-day time frame for responses.

In addition, in its discretion, the Court finds that any objections that the Non-Responding Defendants otherwise would have interposed in responding to Plaintiff's document demands and interrogatories (other than objections based upon privilege) are hereby deemed waived based on the Non-Responding Defendants failure to respond as directed by the Court's prior Orders. *See DeNicola v. Frontline Asset Strategies*, 279 F.R.D. 214, 215 (E.D.N.Y. 2012) ("[B]y its failure to timely respond, the defendant has waived all objections as to the interrogatories and all objections to the document demands except those based on privilege.") (internal citation omitted); *Carr v. Queens-Long Island Med. Grp., P.C.*, No. 02CIV.1676, 2003 WL 169793, at *5 (S.D.N.Y. Jan. 24, 2003) ("The failure to provide discovery responses in a timely fashion is a basis for deeming objections waived."); *Eldaghar v. City of N.Y. Dep't of Citywide Admin. Servs.*, No. 02CIV.91, 2003 WL 22455224, at *1 (S.D.N.Y. Oct. 28, 2003) (concluding that defendants' objections to plaintiff's discovery requests were waived where "there was an unexcused and unexplained failure to assert objections in a timely manner"); *see generally Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944) ("No procedural

principle is more familiar to this court than that a . . . right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before the tribunal having jurisdiction to determine it.").  Although what may seem like a harsh result, the Supreme Court has repeatedly cautioned that "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law," *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S. Ct. 2486, 65 L. Ed. 2d 532 (1980); *accord McNeil v. United States*, 508 U.S. 106, 113, 113 S. Ct. 1980, 124 L .Ed. 2d 21 (1993); *Halstrom v. Tillamook County*, 493 U.S. 20, 31, 110 S. Ct. 304, 107 L. Ed. 2d 237 (1990), and that "[p]rocedural requirements . . . are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1984).  Based upon this authority and the particular facts and circumstances of this case, the Court finds that a deemed waiver of objections is appropriate.  *See, e.g.*, *Labarbera*, 2009 WL 2496463, at *1 ("Any other result would ignore the time limits set forth in the Federal Rules of Civil Procedure, contribute further to the delay in resolving cases, and transform Article V of the Federal Rules of Civil Procedure from a structure of well-defined rights and obligations to a system of suggested, but non-binding, guidelines.") (quoting *Eldaghar*, 2003 WL 22455224, at *1).[3]

Turning next to Defendants Jeffrey Pattinson ("Pattinson") and Landmark Car Co. ("Landmark"), Plaintiff asserts that although a timely response to his demands was received,

---

[3]  Although the Non-Responding Defendants include those who are proceeding *pro se*, that fact in itself does not serve to excuse non-compliance since a party's *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983)); *but see Holtz*, 258 F.3d at 73 (recognizing that district courts have "broad discretion to determine whether to overlook a party's failure to comply with local court rules.").  As such, a finding of waiver is no less appropriate as applied to these *pro se* Defendants.

"certain demands propounded by the Plaintiff were objected to by Pattinson's counsel." DE 80.

Plaintiff avers that on December 20, 2016, after receiving these responses, he conferred with John Wait, Esq., counsel for Pattinson and Landmark in an attempt to resolve all remaining issues. *See id.* Nevertheless, according to Plaintiff, Defendants continued to assert otherwise "boilerplate" objections, including that certain requests sought information "outside the scope of the limited jurisdictional discovery" set by the Court. *Id.*

In response, Defendants Pattinson and Landmark oppose the motion primarily on the grounds that the issues raised "were not brought to my attention until I received a copy of the Motion, despite Plaintiff's counsel's certification to the contrary." DE 82. In addition, as to Plaintiff's document demands nos. 11, 12, 17, 18, 19 and 20 (the specific responses at issue), Defendants state that their refusal to provide responses is based upon the fact that these requests "go well beyond the narrow issue of jurisdictional discovery and seek to impose on Defendants obligations that go beyond the Federal Rules of Civil Procedure and the [Court's] Order." *Id.* Further, Defendants assert that the "burden and expense association [*sic*] with obtaining and producing the documents is outweighed by its benefit."[4] *Id.*

Initially, the Court points out that Defendants' responses, similar to Plaintiff's motion, lack any relevant case law in support of the positions Defendants take. Likewise, a review of Defendants' responses to Plaintiff's document demands nos. 11, 12, 17, 18, 19 and 20, *see* DE 82-1, reveals only conclusory objections as to relevance, overbreath and burden which are insufficient to exclude discovery of the requested information. *See Melendez v. Greiner*, No. 01 Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003) ("General and conclusory

---

[4]   The Court believes that counsel's argument here is actually addressed to the question whether the burden or expense of the proposed discovery outweighs its likely benefit (rather than "whether the burden or expense of the proposed discovery *is outweighed by* its benefit" as expressed here) (emphasis supplied).

objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information."); *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 431 (S.D.N.Y. 2011) (same); *Diaz v. Local 338 of Retail, Wholesale Dep't Store Union, United Food & Commercial Workers*, No. 13-CV-7187, 2014 WL 4384712, at *2 (E.D.N.Y. Sept. 3, 2014) (same); *see also John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) ("Where a party objects to a discovery request, the 'objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'" (quoting *McKissick v. Three Deer Ass'n Ltd. P'ship,* 265 F.R.D. 55, 56–57 (D. Conn. 2010)); *Barella v. Village of Freeport*, 296 F.R.D. 102, 105 (E.D.N.Y.2013) ("The party objecting to the discovery demands must, with some degree of specificity, illustrate the nature and extent of the burden of production.").

Similarly, with respect to Plaintiff's interrogatory no. 7, which asks Pattinson and Landmark, in part, to "[d]escribe [their] relationship to each of the co-defendants," Defendants object only on the grounds that the interrogatory is "objectionable because it goes beyond the scope of the limited purpose of jurisdictional discovery. . . ." DE 82-1. Although Defendants object in a generalized fashion to this interrogatory based upon its "scope," the objection is altogether insufficient since it fails to set forth, with any specificity how or why the interrogatory lies outside the ambit of the Court's September 22, 2016 Order which limited discovery to the "jurisdictional issue." DE 47. *See Pegoraro*, 281 F.R.D. at 128–29 (quoting *Compagnie Francaise d'Assurance Pour le Commerce Exterieur*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)) (in order for an objection to an interrogatory to be properly interposed, a party must show

"specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive, . . . by submitting affidavits or offering evidence revealing the nature of the burden."); *see also Jacoby*, 254 F.R.D. at 478 ("[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy," while producing "no documents and answer[ing] no interrogatories . . . are a paradigm of discovery abuse."). While the Court did caution Plaintiff that his discovery requests and interrogatories seeking jurisdictional discovery were required to be "narrowly tailored to that issue," the Court otherwise set no defined limitations in that regard. *See* DE 47. Therefore, to the extent Defendants Pattinson and Landmark took issue with a particular interrogatory, they were required to do more than simply respond in a "boilerplate" fashion which lacks the necessary specificity for the Court to properly analyze the objection within the contextual facts of this individual case.

Notwithstanding Pattinson and Landmark's insufficient objections, the Court nevertheless has a duty to ensure, in accordance with Rule 26(b)(1) that the discovery sought by Plaintiff — even in the limited jurisdictional context — is both relevant and proportional in light of the particular facts and circumstances of this case. *See* Fed. R. civ. P. 26(b)(1). Again, based on the passage of time, the Court will review the requests and interrogatory at issue.

With respect to document request nos. 11, 12, 17, and 18, the time frame referenced by the Plaintiff for which documents are requested is January 1, 2011 to the present. However, document request nos. 19 and 20 seek documents for the period running from January 1, 2013 to the present. *See* DE 82, Ex. A. In reviewing the Complaint, the Court points out that the facts giving rise to Plaintiff's claims appear to have their inception in the fall of 2013, when Plaintiff was initially approached about the prospect of having Edwards serve as Plaintiff's broker and

sales agent.  *See* Compl. ¶¶ 78-82.  Likewise, the latest date referenced in the Complaint is

July 1, 2016.  *See id.* ¶¶ 152, 154, 158, 160, 164.  As such, in order to ensure that the requisite

proportionality is achieved — especially while jurisdictional questions remain — the Court is

limiting the temporal period of Plaintiff's discovery requests.  Therefore, Defendants shall

produce the requested information for the period January 1, 2013 through July 31, 2016.

As to document request nos. 11 and 12, Plaintiff seeks copies of "any and all documents,

business records, tax records, customs records, invoices, purchase orders, and contracts (whether

executed or not) involving the Defendant[s] . . . and the United States, a State thereof, a United

States resident, a business located or doing business in the United States and any individual

located within the United States. . . ."  DE 82, Ex. A.  In addition to the temporal restrictions set

forth above, the Court finds that although business records may provide clarity concerning the

jurisdictional issues, the request for tax records is premature.  Moreover, Plaintiff has failed to

meet the higher threshold required for the Court to mandate production of tax records at this

stage of the proceedings.  *See Sadofsky v. Fiesta Prod., LLC*, 252 F.R.D. 143, 149 (E.D.N.Y.

2008) ("In order for a requesting party to prevail on a motion to compel the production of tax

returns, whether corporate or personal, the requesting party must satisfy a two-prong test: (1) the

tax returns must be relevant to the subject matter of the action, and (2) a compelling need must

exist because the information is not readily obtainable from a less intrusive source.") (citing

*Hamm v. Potamkin*, No. 98 Civ. 7425, 1999 WL 249721, at *2, (S.D.N.Y. Apr. 28, 1999)

(applying two-part test to motion to compel corporate tax returns); *see Melendez v. Primavera*

*Meats, Inc.*, 270 F.R.D. 143, 144 (E.D.N.Y. 2010) (applying two-part test and recognizing that

"Although income tax returns are not inherently privileged, courts are typically reluctant to

compel their disclosure because of both the private nature of the sensitive information contained

therein and the public interest in encouraging the filing by taxpayers of complete and accurate returns.") (quoting *Carmody v. Village of Rockville Centre*, 2007 WL 2042807, at *2 (E.D.N.Y. July 13, 2007)); *Caputi v. Topper Realty Corp.*, No. 14-CV-2634, 2015 WL 893663, at *2 (E.D.N.Y. Feb. 25, 2015) (same). Likewise, there are sufficient categories of other records requested to obtain information regarding jurisdiction without necessitating tax returns. Further, these requests are similarly overbroad as to their geographical scope. Specifically, there are no allegations set forth in the Complaint -- and likewise no basis to infer -- that any of the Defendants have engaged in business "with the United States" or "a State thereof" and these parameters are likewise stricken.

Document request nos. 17 and 18 seek "[c]opies of any and all communications of any kind, whether oral, written, or electronic, including but not limited to, travel records, invoices for travel, itineraries and/or travel receipts, related to travel by the Defendant[s], [including Defendant Landmark['s] employees, servants, contractees, agents and/or representatives to or from the United States. . . ." DE 82, Ex. A In addition to the temporal limitations set forth above, the Court finds that the phrase "communications of any kind" is overly broad and ambiguous even when taking into consideration the qualifying language contained in the balance of the document request. At its core, this request seeks written (including electronic) and oral communications associated with or pertaining to travel to the United States by Defendants Pattinson and Landmark during the relevant period. As rephrased, the Court finds that the written and oral communications (to the extent there is a record or recording of any oral communications) related to Defendants' travel to the United States is relevant to the jurisdictional question and should be produced, with the further qualification that it be limited solely to Pattinson, both in his individual capacity and as managing director of Landmark.

*See* Compl. ¶ 37 (identifying Pattinson as "managing director" of Landmark). This further limitation is warranted in light of the fact that the Complaint does not identify or otherwise implicate persons who could be characterized as "employees, servants, contractees, agents and/or representatives of Landmark." DE 82, Ex. A.

Document request nos.19 and 20 seek "[a] copy of any and all telephone records, including records for land-lines and cell phones, belonging to and/or used by the Defendant[s], [including Defendant Landmark's] employees, agents and/or representatives. A response to this demand shall include the phone number and carrier used by the answering Defendant." DE 82, Ex. A. At this stage, although telephone records may shed some marginal light as to the geographic scope of Defendants' business dealings (*i.e.*, based upon the telephone numbers contacted), complete disclosure of all telephone records for this extensive period is not proportional to the needs of this case, especially where, as here, the Court is permitting Plaintiff to request business records and travel documents which in themselves would establish the necessary jurisdictional nexus to the extent such a connection exists. Further, although Plaintiff, in an altogether conclusory fashion, states that these records "touch the central issue of jurisdiction," DE 80, Plaintiff has otherwise provided the Court with no basis, rationale or example as to why these records are relevant and necessary at the present stage of the proceedings. As such, document request nos. 19 and 20 are restricted as follows: the Court will permit Plaintiff to obtain a sampling of three months of Jeffrey Pattinson's records alone. Plaintiff is to promptly provide to Mr. Pattinson's counsel the identification of the specific three months of telephone records Plaintiff wishes to obtain.

Turning to interrogatory no. 7, which asks Pattinson to "[d]escribe your relationship to each of the co-defendants: a) For each co-defendant state: (i) your relationship, (ii) any and all

transactions said co-defendant was involved in concerning a United States resident and/or United States based company, and (iii) any purchase or sale of a car located within or deliverable within the United States whereby said co-defendant was involved." DE 82, Ex. A. Although perhaps marginally relevant to the jurisdictional question, this interrogatory is unrestricted as to timeframe and scope. Specifically, the interrogatory seemingly encompasses an unrestricted period of time notwithstanding the dates set forth in the Complaint. In addition, it is unclear, at this stage of the proceedings, what good faith basis Plaintiff has to assume that Pattinson has knowledge of any transactions in which the Co-Defendants may have been involved with respect to a United States based entity or individual. Nor is any good faith basis asserted for Plaintiff's belief that Pattinson had knowledge of any purchase or sale of a car (apparently not solely limited to the automobiles at issue in this litigation) located within or deliverable within the United States. Plaintiff attempts to deflect the problems with this interrogatory by asserting that the "transactions alleged herein involved multiple parties and numerous corporate entities" and that "counsel for these Defendants is improperly withholding information about their relationships with the co-Defendants." DE 80. However, these bald assertions, without more, provide an insufficient basis for the Court to order Defendants to respond further to interrogatory no. 7 as currently constituted.

Based upon the foregoing analysis, Defendants Pattinson and Landmark are directed to serve supplemental responses in accordance with the directives as set forth by the Court. These responses must be served upon the Plaintiff by October 16, 2017.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel is GRANTED, in part, and DENIED, in part. The Court declines to award sanctions.

**SO ORDERED.**

Dated: Central Islip, New York
       September 25, 2017


/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge