**FILED
CLERK**

12:46 pm, Sep 24, 2019

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
BERNARD CARL.,

      Plaintiff,

   -against-

THOMAS HAMANN,

      Defendant.
---------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
2:16-cv-03863 (ADS)(AKT)

**APPEARANCES:**

**Silverberg, P.C.**
*Attorneys for the Plaintiff*
320 Carleton Avenue Suite 6400
Central Islip, NY 11722
  By: Karl J. Silverberg, Esq., Of Counsel.

**Law Office of George W. Kramer**
*Attorneys for the Plaintiff*
30 Clemens Court
Rocky Hill, CT 06067
  By: George W. Kramer, Esq., Of Counsel.

**SPATT, District Judge**:

  On July 12, 2016, plaintiff Bernard Carl (the "Plaintiff") brought this action against Richard Edwards ("Edwards"), John Hawkins ("Hawkins"), Specialist Cars of Malton Limited, Graeme Scholes ("Scholes"), Left Hand Drive Ltd., Paul Sweeney ("Sweeney"), PHS Consultants, Andrew Howarth ("Howarth"), Christopher Williams ("Williams"), Trevor Smith ("Smith"), Foos China Trading, Vikash Limbani ("Limbani"), Landmark Car Co., Jeffrey Pattinson ("Pattinson"), and Thomas Hamann asserting violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.SC. § 1961, *et seq*. ("RICO") and common law claims for civil conspiracy, fraudulent

1

misrepresentation, fraud, trespass to chattel, unjust enrichment, and accounting. The allegations centered around the theft by Edwards of millions of dollars' worth of vehicles from the Plaintiff.

On April 9, 2018, the Plaintiff voluntarily dismissed the claims against all defendants other than Thomas Hamann (the "Defendant").

Presently before the Court is a motion by the Plaintiff to amend the Complaint pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P" or "Rule") 15. For the following reasons, the Court grants the motion, in part, and denies the motion, in part.

## I. BACKGROUND

This case relates to several vintage automobiles that the Plaintiff purchased at the behest of Edwards. In the fall of 2013, the Plaintiff entered into a non-exclusive, fee-for-service, brokerage agreement with Edwards through which the Plaintiff would purchase and re-sell cars brought to his attention by Edwards in exchange for a fee tied to the profitability of the cars. Under the agreement, Edwards owned no interest or title in the cars and possessed no authority to make purchases or sales on the Plaintiff's behalf without the express approval of the Plaintiff. Between November 2013 and November 2014, the Plaintiff purchased approximately seventeen vintage automobiles on the recommendation of Edwards pursuant to this agreement, including an orange 1973 Porsche 2.7RS Touring (the "Porsche Touring") and a 1973 white Porsche 2.7RS Lightweight (the "Porsche Lightweight") (together, the "Porsche motorcars").

On October 12, 2015, Edwards stole eight of those cars and sold them on the black market for less than market value. The original Complaint sought, pursuant to the RICO statute and various common law theories of liability, to recover from Edwards and his alleged co-conspirators compensatory and treble damages representing, *inter alia*, the value of the stolen cars.

2

The Defendant is a vintage car dealer who attempted to purchase the Porsche motorcars for a client through Edwards between August 1, 2015 and October 15, 2015 (the "Negotiation Period"). The original Complaint contained no specific factual allegations regarding the Defendant's alleged role in the conspiracy other than that he continued marketing for sale the Porsche motorcars even after being warned that the cars had been stolen from the Plaintiff. The Proposed Amended Complaint ("PAC") includes additional facts, as well as several new causes of action relating to a $520,000 judgment against the Plaintiff in favor of Maria Hamann, the former wife of the Defendant, by the State of Connecticut Superior Court for the Stamford/Norwalk Judicial District, *Hamann v. Carl*, No. 16-cv-6027515 (hereinafter the "Connecticut Action").

The allegations raised by the PAC can be broken down into two categories: (1) claims for contribution or indemnification for the money judgment against the Plaintiff in the Connecticut Action; and (2) direct claims relating to Edwards's supposed conspiracy. Unless otherwise stated, all facts are drawn from the PAC and construed in a light most favorable to the Plaintiff.

**A. THE CONTRIBUTION CLAIMS.**

In essence, the contribution claims seek indemnification for a money judgment regarding a $150,000, one-week, interest-free loan made to the Plaintiff by Maria Hamann. Edwards solicited the loan by representing himself to the Defendant as the Plaintiff's agent and partner, despite in fact lacking such authority.

On September 1, 2015, while separately negotiating for the purchase of the Porsche motorcars, Edwards approached the Defendant and asked him to make a loan of $150,000 to cover an interest payment on a line of credit the Plaintiff had with Ferrari Financial. The Defendant did not have $150,000, so he took the request to Maria Hamann. He asked her "if she could send $150,000 which would be a loan to a very important American collector who has a shortage of

3

cash at the moment and he needs it just only for one – for one week to satisfy obligation to Ferrari Financial." Maria Hamann acceded to the Defendant's request and, on or about September 1, 2015, sent the Wire, in the amount of $150,000, to an account held for the Plaintiff's benefit at Ferrari Financial.

Meanwhile, the Plaintiff was entirely unaware of the representations being made by the Defendant to Maria Hamann to secure the Wire. The Plaintiff had not sought a loan from the Defendant or Maria Hamann and had never agreed to accept a loan from Maria Hamann. The Defendant never spoke to the Plaintiff about the loan, and sought Maria Hamann's agreement to make the Wire based solely on his communications with Edwards.

Moreover, Edwards was neither the Plaintiff's partner, actual agent or apparent agent, and possessed no authority to open a line of credit on the Plaintiff's behalf. The Plaintiff asserts that the Defendant should have known that Edwards lacked such authority, given that prior to the Negotiation Period Edwards faced criminal charges for fraud in connection with the purchase and sale of vintage cars in both the United States and the United Kingdom. In the Connecticut Action, the Defendant further testified that, at the time, he was aware Edwards had financial troubles and was accused of "embezzle[ing] a large amount of money from the sale of an expensive exotic car." Significantly, the Defendant also testified that he would never have himself made a loan to Edwards. The Plaintiff faults the Defendant for failing to disclose any of these facts or circumstances to Maria Hamann.

When Edwards failed to return the Wire in a week, the Defendant began seeking repayment of the Wire from Edwards over a period of four months. During those negotiations, the Defendant questioned whether Edwards had any right to borrow money with the Plaintiff's credit or cars behind the loan, but without the Plaintiff's authorization or knowledge. Similarly, Edwards

4

continuously insisted to the Plaintiff that the Wire was a loan made to Edwards by the Defendant, which Edwards (and not the Plaintiff) had the responsibility to repay.

On January 14, 2016, the Defendant made a demand on the Plaintiff via e-mail for repayment of the Wire with interest, costs and attorney's fees. Two hours later, the Plaintiff replied, denying that he made any misrepresentations or borrowed any money from the Defendant and suggesting that the Defendant continue to look to Edwards for repayment.

On February 1, 2016, the Hamanns filed the complaint in the Connecticut Action asserting that the Plaintiff's failure to repay the Wire constituted, *inter alia*, unjust enrichment and civil theft. After conducting a trial between January 10 and 12, 2018, the Defendant withdrew his complaint, leaving Maria Hamann as the sole remaining plaintiff.

On April 25, 2018, the court issued a judgment in favor of Maria Hamann with damages in the amount of $450,000 plus interest. The court found that the Plaintiff was unjustly enriched and committed civil theft by refusing to repay the Wire. Although no loan or underlying contract existed, the Plaintiff possessed no justifiable reason for his retention of the $150,000, because he knew the payment was made by Maria Hamann for his benefit and any wrongdoing by the Defendant had no connection to the Wire.

In addition to the money judgment issued in the Connecticut Action, the Plaintiff alleges that the Wire indirectly harmed him in other ways. For instance, the Plaintiff believed that the $150,000 wire was a non-refundable deposit from Edwards for the purchase of a Lamborghini Miura by another dealer, which he was entitled to retain. Moreover, the Plaintiff alleges that the deposit allowed Edwards to "buy time" to facilitate his fraudulent scheme to sell the Plaintiff's other vintage cars and divert the proceeds to his own use and benefit.

5

**B. THE DIRECT CLAIMS.**

The direct claims allege that the Defendant's actions during the Negotiation Period facilitated Edwards's conspiracy to steal the Porsche motorcars by delaying the Plaintiff's ability to recover the vehicles in a timely manner. Specifically, the Plaintiff asserts that the Defendant created false documents showing a buyer's readiness to acquire the Porsche motorcars that resulted in the entities holding the vehicles refusing to turn them over to the Plaintiff.

On August 28, 2015, George Kramer ("Kramer"), at the Defendant's request, sent the following e-mail to Edwards:

> To whom it may concern: The undersigned attorney hereby confirms that he had received EUR 1.4 million to be held for Thomas Hamann toward the purchase of a Porsche Carrera 2.7 Touring and a Porsche Carrera 2.7RS Lightweight subject to Buyer's satisfactory inspection. Payment shall be made upon the conclusion of satisfactory Inspection of said cars. The price is ex their current location in the U.K. George Kramer Attorney-at-Law.

PAC ¶ 48 (hereinafter the "Kramer email"). The Defendant testified in the Connecticut Action that he knew this e-mail was false because neither Kramer nor the Defendant had the 1.4 million euros at the time, as the buyer had not yet committed to purchasing the Porsche motorcars.

On September 1, 2015, the Defendant sent another e-mail to his client stating: "I will send [the owner of the cars] from my money today a deposit, a fully refundable deposit in the amount of 200,000 because I don't want to lose my faith and jeopardize a long business relationship and friendship." The Defendant testified in the Connecticut Action that he knew that he would not use his own money and instead would get the money from elsewhere.

The Plaintiff alleges that the Kramer email was used to his detriment with two audiences: Bury Leasing Ltd. ("Bury") and Specialist Cars Malton ("SCM").

6

1. **Bury.**

During the Negotiation Period, the Plaintiff believed the Porsche motorcars were being held for his account by SCM, who he had repeatedly demanded return the cars to his possession. Unbeknownst to the Plaintiff, the Porsche Touring was actually being held by another lender, Bury, as collateral for a loan taken out by an associate of Edwards based on misrepresentations as to its ownership.

On or about August 29, 2015, a copy of the Kramer email was presented to Bury by an associate of Edwards, to serve as evidence of the impending sale of the Porsche Touring. At that time, the loan secured by the Porsche Touring was seriously in default and Bury was threatening to liquidate its collateral, *i.e.*, to sell the Porsche Touring and use the funds to repay the loan.

After receiving the Kramer email, Bury chose to defer any such liquidation and to retain possession of the Porsche Touring until mid-October 2015. The Plaintiff believes that had Bury chosen to liquidate the Porsche Touring, he would have recovered the car either through Bury learning the Car's true ownership or by his discovery of the advertisement of the car for sale.

2. **SCM.**

On September 14, 2015, in response to the Plaintiff's repeated demands for the return of several of his cars, SCM advised the Plaintiff that it would not return either of his Porsche motorcars because it was in negotiation to sell the vehicles.

On September 16, 2015, SCM reported to the Plaintiff that neither car was available to be returned because it agreed to sell the Porsche Touring for £570,000 and the Porsche Lightweight for £700,000.

Bury returned the Porsche Touring to SCM on or about October 12, 2015. The next day, the Plaintiff obtained an order from a court in the United Kingdom requiring SCM to return

7

possession of the Porsche motorcars to the Plaintiff. However, before the Plaintiff could enforce the order, Edwards removed the Porsche motorcars from SCM's premises and put them beyond the Plaintiff's reach.

SCM subsequently identified Edwards as the source of its early September 2015 understanding that an agreement to purchase the Porsche motorcars existed. The Plaintiff asserts, on information and belief, that the Kramer email was the basis for Edwards's false representations to SCM. Thus, the Plaintiff contends that the Defendant proximately caused the loss of the Porsche motorcars by materially delaying his efforts to recover them. The Plaintiffs believes that these delays enabled Edwards to steal the Porsche motorcars from SCM before he could retrieve them.

## II. DISCUSSION

### A. THE LEGAL STANDARD.

According to Rule 15(a), a party attempting to amend its pleadings more than 21 days after serving it may only do so "with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts have liberally interpreted this Rule. *See D.C.R. Trucking & Excavation, Inc. v. Aetna Cas. And Sur. Co.*, No. 96-cv-3995, 2002 WL 32096594, at *8 (E.D.N.Y. Oct. 31, 2002). The power to amend a pleading is within the discretion of the District Court. *See Gursky v. Northwestern Mut. Life Ins. Co.*, 139 F.R.D. 279, 281 (E.D.N.Y. 1991) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)); *see also Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995).

Amendments should only be denied for legitimate reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir.

2008). "'The Rule reflects two of the most important principles behind the Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated ... and mere technicalities should not prevent cases from being decided on the merits.'" *D.C.R. Trucking & Excavation, Inc.*, 2002 WL 32096594, at *8 (quoting *Monahan v. N.Y. City Dep't of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000)).

"[L]eave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.*, if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." *Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). It is well-established that a complaint should be dismissed under Fed.R.Civ.P. 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Indeed, the issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "'[D]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009)).

In deciding a motion to dismiss, the Court must accept the material facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 129 S.Ct. 1937 at 1949–50; *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 91 (2d Cir.2007). However, "that 'tenet' 'is

inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 129 S.Ct. at 1949). As such, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 129 S.Ct. at 1950. Only if this Court is satisfied that the complaint cannot state any set of facts that would entitle the plaintiff to relief will it grant dismissal pursuant to Rule 12(b)(6). *Hertz Corp. v. City of N.Y.*, 1 F.3d 121, 125 (2d Cir.1993).

**B. APPLICATION TO THE FACTS.**

The PAC restates the Complaint's claims for trespass to chattel and violation of the RICO statute, and includes additional causes of action for common law contribution, common law indemnification, negligence, and violations of the Connecticut Unfair Trade Practice Act ("CUTPA"). Conversely, the PAC drops the Complaint's claims for conspiracy to violate RICO, civil conspiracy, fraudulent misrepresentation, fraud, unjust enrichment and accounting. The Defendant opposes the amendments on futility grounds. In his view, the Plaintiff lacks evidence sufficient to establish proximate cause for the RICO claims, and the remaining claims are either issue precluded or wholly speculative. For the following reasons, the Court will permit the proposed amendments regarding the RICO and trespass to chattel claims, but rejects the remaining proposed amendments as futile.

    1. **The RICO Claim.**

The Defendant contends that the RICO claims in the PAC are futile because the Plaintiff failed to "establish proximate cause," *i.e.*, "an adequate nexus between the alleged violation and the alleged harm to the Plaintiff." ECF 142 at 6 (citing *Hecht v. Commerce Clearing House Inc.*, 897 F.2d 21, 23– 24 (2d Cir. 1990)).

The Court will not consider this argument because the original Complaint asserted a RICO cause of action against the Defendant. Albeit the Complaint contains less factual detail than the PAC, its substance alleged that the Defendant conspired with Edwards to steal the Porsche motorcars. The Defendant initially moved to dismiss these claims, but never refiled his motion after the Court dismissed the motion without prejudice and with leave to renew, instead choosing to move for summary judgment. It would produce an incredibly bizarre result if the Court were to find the Plaintiff failed to state a RICO violation in this order, all the while the operative complaint retained a RICO cause of action with no pending motion to dismiss.

Considering that the Defendant's motion for summary judgment has now been fully briefed, and that the evidence relied on by the Plaintiff in opposition to the motion is the basis for the new facts asserted in the PAC, it makes much more sense for the Court to evaluate the viability of the Plaintiff's RICO claims in the context of the fully briefed motion than via the Defendant's conclusory opposition to the motion to amend. *See Linkov v. Golding*, No. 12-cv-2722, 2014 WL 1399414, at *1 (E.D.N.Y. Apr. 10, 2014) ("In light of the fact that the proposed Amended Complaint adds two sentences to the Original Complaint and defendant asserts that both complaints are insufficient under the Federal Rules, the Court finds the better course here is to permit amendment, without prejudice to defendant moving to dismiss the Amended Complain."); *Horowitz v. Stryker Orthopaedics, Inc.*, No. 07-cv-1572, 2008 WL 11447943, at *2 (E.D.N.Y. Aug. 26, 2008) (granting motion to amend complaint where "[t]he defendant has already briefed its motion to dismiss, taking the position that the differences between the original complaint and the proposed amended complaint are irrelevant to the analysis of the legal sufficiency of the plaintiff's claims").

Accordingly, the Court grants the Plaintiff's motion to amend with respect to the RICO and trespass to chattel claims without prejudice to the Defendant's arguments in his motion for summary judgment.

## 2. Collateral Estoppel.

The Defendant asserts that the Plaintiff's claims are barred by the doctrine of collateral estoppel due to the judgment in the Connecticut Action. The "fundamental notion" of the doctrine of collateral estoppel, or issue preclusion, "is that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies." *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 718–19 (2d Cir.1993). Accordingly, collateral estoppel applies when: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was "actually litigated and actually decided," (3) there was "a full and fair opportunity for litigation in the prior proceeding," and (4) the issues previously litigated were "necessary to support a valid and final judgment on the merits." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir.1986).

The Plaintiff's sole response is that the factual findings in the Connecticut Action were not necessary to the outcome because the Defendant voluntarily withdrew his claims, such that the court made no determination regarding the Defendant's wrongdoing. The Court agrees with some, but not all, of the Plaintiff's assertion. Because the Defendant withdrew from the Connecticut Action, the court made no findings regarding his culpability for the theft of the Porsche motorcars. Therefore, the RICO, trespass to chattel, and unfair trade practice (concerning the Porsche motorcars) claims are not barred by the doctrine of collateral estoppel.

However, the court did find that the Plaintiff himself, not the Defendant, was responsible for the harm to Maria Hamann. The thrust of the Court's ruling was that, regardless of what caused

Maria Hamann to send the Wire, the Plaintiff unjustly enriched himself and committed civil theft by refusing to return the funds without any justifiable reason. ECF 142-1 at 27 ("The court concludes that rather than providing a justifiable reason for his retention of the $150,000, Carl's claims amount to non-viable excuse for his indefensible actions."), 33 ("The court finds that on January 14, 2016, having been fully informed of the facts establishing that he had no legal or equitable right to retain the $150,000, Carl refused to return them to Maria. The court finds that Carl's actions constituted statutory theft under § 52-564, entitling Maria to treble damages."). Thus, the harm to Maria Hamann arose from the Plaintiff's "indefensible" retention of the $150,000, *id.* at 27, not the Defendant's erroneous solicitation of the loan from Maria Hamann on the Plaintiff's behalf.

Moreover, the court expressly found that "any misconduct attributable to Thomas or Attorney Kramer in connection with the attempt to purchase the two Porsches owned by Carl are in no way connected to the $150,000 which Maria advanced for Carl's benefit as a loan." ECF 142-1 at 30. In doing so, the Court found that "there was no evidence that Carl relied upon any misrepresentations in the Kramer email or that he suffered harm of any sort as a result of it" or "evidence linking the sale of the Porsches to the $150,000 Maria sent to Carl's account at Ferrari Motor Services." *Id.* at 29.

These findings were necessary to support a valid and final judgment, because the Plaintiff claimed that the Defendant's behavior entitled him to a special defense of unclean hands. By rejecting the Plaintiff's defense, the court necessarily found that the Plaintiff's conduct (rather than the Defendant's) caused the harm to Maria Hamann. The contribution, indemnification, negligence, and unfair trade practice (concerning financing) causes of action are clear attempts to

escape the natural and intended consequences of that ruling. PAC ¶¶ 178, 185, 201, 225. Therefore, the Plaintiff is precluded from asserting them in this proceeding.

Accordingly, the Court denies the Plaintiff's motion to amend with respect to the proposed contribution, indemnification, negligence, and unfair trade practice (concerning financing) causes of action because the proposed amendments are futile.

### 3. The Unfair Trade Practice Claim Concerning the Porsche Motorcars.

The sole remaining cause of action that the Plaintiff seeks to add is his claim that the Defendant violated the CUTPA due to his purported involvement in Edwards's scheme to steal the Porsche motorcars. Boiled down to its essence, the claim is that the Kramer email contained a misrepresentation that harmed the Plaintiff by ultimately enabling Edwards to steal the vehicles before the Plaintiff could recover them.

Connecticut courts apply "traditional common-law principles of remoteness and proximate causation to determine whether a party has standing to bring an action under CUTPA." *Conn. Pediatric Med. Ass'n v. Health Net of Conn., Inc.*, 28 A.3d 958, 962 (Conn. 2011). "[A]s a general rule, a plaintiff lacks standing unless the harm alleged is direct rather than derivative or indirect." *Connecticut State Med. Soc. v. Oxford Health Plans (CT), Inc.*, 863 A.2d 645, 652 (Conn. 2005).

Here, the PAC asserts that, entirely unbeknownst to the Plaintiff, Kramer, a third party, sent an email to Edwards, a fourth party, who then took the email to Bury and SCM, fifth parties, who relied on the email to justify their refusal to turn over the Porsche motorcars to the Plaintiff. While SCM was in possession of the Porsche motorcars, Edwards stole the vehicles, thereby injuring the Plaintiff. These allegations fail to state a claim under the CUTPA.

The only connection between the Defendant and the above-described chain of events is that Kramer drafted the email at the Defendant's behest. But the PAC contains no allegation that

14

the Plaintiff received the email or was otherwise made aware of its contents—*i.e.*, that he was *directly* harmed by the representations contained therein. To the contrary, the PAC explicitly claims that the Defendant never contacted the Plaintiff during the Negotiation Period. PAC ¶ 7, 86, 88, 98, 105. Further, the judgment in the Connecticut Action, which the Plaintiff incorporated to the PAC by reference, found:

> Carl concedes that the negotiations between Thomas Hamann and Edwards regarding the sale of the two Porsches was "[u]nbeknowst to Carl." There was no evidence that Carl was ever informed about Attorney Kramer's e-mail until long after negotiation for the purchase of the two Porsches had terminated. Moreover, there was no evidence that Carl relied upon any misrepresentations in the Kramer e-mail or that he suffered harm of any sort as a result of it.

ECF 142-1 at 28–29.

The only "direct" harm to the Plaintiff occurred as a result of Edwards's theft of the Porsche motorcars; the independent action of a third, if not fourth, party. In an attempt to tie the Defendant to the theft, the Plaintiff asserts that Edwards used the Kramer email to "buy time" necessary to facilitate his theft of the vehicles. By definition, these allegations describe a harm that occurred as an indirect result of the Defendant's actions, because Edwards's behavior is an intervening event that cuts off the chain of causation. Absent an allegation that the Defendant intended or was aware of the likelihood of that result, the Plaintiff lacks standing under the CUTPA. *See Heavy Weight, Inc. v. Giusti*, No. 08-cv-5022428S, 2010 WL 3447798, at *6 (Conn. Super. Ct. Aug. 4, 2010) (holding "as a matter of law that the defendant does not have standing to pursue a CUTPA claim against the plaintiff," where the defendant's counterclaim asserted that the plaintiff's hiring of illegal immigrants violated the CUTPA due to those employees' theft of materials from the defendant's warehouse because "the defendant's damages are simply too remote and derivative for the defendant's CUTPA claim to stand"); *All Reach Equip. v. Universal Shelters*, No. 01-cv-0448821S, 2002 WL 2031378, at *1 (Conn. Super. Ct. July 30, 2002) (finding that false statement

made to a third party, and not the plaintiff, was "not a CUTPA violation because this plaintiff was not deceived nor did the party for whom the statement was given suffer an ascertainable loss"); *N. Am. Energy Sys., LLC v. New England Energy Mgmt., Inc.*, 269 F. Supp. 2d 12, 20 (D. Conn. 2002) (finding that "[a]ny possible injury suffered by plaintiffs" as a result of a third party denying a permit application "is an indirect injury and therefore cannot confer standing pursuant to CUTPA."); *Collins v. Gulf Oil Corp.*, 605 F. Supp. 1519, 1523 (D. Conn. 1985) (finding that injury caused by revocation of the plaintiff's visa after discharge failed to state a claim "as the relationship between plaintiff's loss and defendants' unfair practices is too remote to sustain plaintiff's claims").

Assuming the Plaintiff suffered a direct injury, his proposed CUTPA claim would still fail. "[S]tanding under CUTPA requires that the plaintiff have 'some sort of business relationship' with the defendant business 'such that he suffers injury as either a consumer or competitor of the defendant or as some other businessperson affected by its unfair or deceptive acts.'" *Aviles v. Wayside Auto Body, Inc.*, 49 F. Supp. 3d 216, 232 (D. Conn. 2014) (quoting *Gersich v. Enter. Rent a Car*, No. 95-cv-01053, 1995 WL 904917, at *5, (D. Conn. Nov. 20, 1995)). As the Plaintiff concedes in the PAC, Edwards conducted the negotiations for the Porsche motorcars entirely without the Plaintiff's consent or knowledge. Thus, no cognizable commercial relationship existed between the Plaintiff and the Defendant, as is required to assert a consumer injury under the CUTPA. *See Nolfi v. Melson*, No. 99-cv-0360876S, 2000 WL 839971, at *6 (Conn. Super. Ct. June 12, 2000) ("There is no allegation that the defendants sold, rented, leased distributed or offered to sell, rent, lease, or distribute anything of value to the plaintiffs. The plaintiffs fail to allege facts demonstrating that they were injured, either as consumers, or as competitors in the relevant marketplace in which the defendants were actively involved."); *Kruger v. Lynch*, No. 98-cv-0359169S, 1999 WL 773560, at *3 (Conn. Super. Ct. Sept. 10, 1999) (finding no consumer

injury occurred because the no "commercial relationship" existed between the plaintiff and defendant; "the plaintiff does not pay rent in exchange for occupancy, rather the defendant pays the plaintiff in exchange for the plaintiff's janitorial services"); *Marr v. WMX Techs., Inc.*, No. 96-cv-0071542S, 1998 WL 799665, at *7 (Conn. Super. Ct. Nov. 6, 1998) ("The plaintiffs concede that they are not consumers of the defendants' goods or services, competitors of the defendants, landfill business or other business persons who interact with them in the waste management market"); *Goldsich v. City of Hartford*, 571 F.Supp.2d 340, 346–47 (D.Conn. 2008) (granting summary judgment on plaintiff's CUTPA claim against defendant concert promoter because plaintiff had not purchased a ticket to the concert and thus was not a customer, competitor, or other business person). To the extent a relationship exited, the Defendant was merely a broker acting on behalf of a potential consumer. In other words, the Plaintiff was the *seller*, not a consumer or other businessperson affected by an unfair trade practice.

Accordingly, the Court denies the Plaintiff's motion to amend with respect to the proposed CUTPA cause of action concerning the Porsche motorcars because the proposed amendment is futile.

### III. CONCLUSION.

For the foregoing reasons, the Court grants, in part, and denies, in part the Plaintiff's motion to amend the Complaint pursuant to Rule 15. The Plaintiff is directed to file an amended complaint consistent with this opinion no later than 14 days from the issuance of this order.

It is **SO ORDERED**:

Dated: Central Islip, New York

September 24, 2019

                                              ___/s/ Arthur D. Spatt_____

                                              ARTHUR D. SPATT

                                              United States District Judge