# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:      **HON. FRANCIS A. KAHN, III**

*Justice*

PART          IAS MOTION 14

-------------------------------------------------------------------X

BERNARD CARL,

INDEX NO.          157289/2018

MOTION DATE          4/2/2019

Plaintiff,

- v -

MOTION SEQ. NO.          001

THOMAS HAMANN, GEORGE KRAMER

**DECISION AND ORDER**

Defendants.

-------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 55

were read on this motion to/for          DISMISSAL          .

Upon the foregoing documents, the motion by Defendant George Kramer ("Kramer") pursuant to CPLR §3211[a][1], [5], [7] and [8] is determined as follows:

Presented is a motion with relatively straightforward legal issues, but an exceedingly complicated factual background[1]. The court will limit its recount of the underlying circumstances to only those absolutely required to determine the within motion.

Plaintiff Bernard Carl ("Carl") is a passionate collector of classic European sports cars who after retirement decided to further indulge his pastime by commencing a business relationship with Richard Edwards ("Edwards"), a British national and resident who was described in the papers as an individual with a colorful to unsavory reputation. Despite knowledge of Edward's character, Carl proposed a business relationship to Edwards because of his apparent talent for procuring classic cars at desirable cost. Carl, an attorney with a prodigious resume, drafted a document to define the business relationship between himself and Edwards. Distilled to its essence, Edwards would locate cars which Carl would purchase if found acceptable and Edwards would be granted a limited exclusive period to market the cars. If a transaction was consummated with a buyer found by Edwards, the net profits would be split evenly between Carl and Edwards. Apparently, Edwards consented to the terms of the agreement which constituted the basis of the transactions between the two from late 2013 through 2015. During that period, Carl and Edwards completed numerous transactions pursuant to the terms of the agreement. In May 2015, the agreement between Carl and Edwards expired.

Defendants Thomas Hamann ("Thomas") and Maria Hamann ("Maria") are former spouses who, at least as of January 2019, resided together. Thomas is a professional dealer of classic automobiles who, since 1998, has operated a business named Hamann Classic Cars with an average sales volume of roughly $40,000,000.00. Thomas and Carl initially met socially in Palm Beach when the latter contacted the former regarding the sale of certain cars.

---

[1] The complaint herein is 47 [forty-seven] pages long with 187 paragraphs (37 pages) comprising the factual allegations. A decision after trial issued in *Hamann v Carl* by the Superior Court of Connecticut, Stamford, on nearly identical facts raised herein, required 21 of 37 pages to narrate the transactions between the parties.

157289/2018  CARL, BERNARD vs. HAMANN, THOMAS
Motion No. 001

Page 1 of 5

As of 2015, Carl understood he owned eight cars which Edwards had located, to wit four Porsches, two Ferraris, a Lamborghini and an Alfa Romeo. Only two of these cars are the subject of the present litigation, specifically a 1973 white Porsche 2.7RS Lightweight and a 1973 orange Porsche 2.7RS Touring. Carl had never seen any of the cars in person, but understood they were stored at Specialist Cars of Malton ("Specialist Cars") located in northern England and owned by John Hawkins ("Hawkins"). However, the Touring Porsche was actually held, without Plaintiff's knowledge, by Bury Leasing, Ltd. ("Bury") as collateral for a loan Edwards had secured based upon Edwards' false representation as to ownership of the vehicle.

In July 2015, Edwards appeared in a British court to defend, at trial, criminal charges arising out of his alleged theft of deposits given to him in anticipation of automobile sales. Carl attended the trial and although Edwards was ultimately exonerated, Edward's testimony, which included tales of financial dealings with gangsters, convinced Carl that Edwards was unworthy of his continued trust. By August 2015, Carl determined to obtain physical possession of his eight cars. After receiving circumspect and suspect responses to his written inquiries from Edwards and Hawkins, Carl obtained an order from a British court in October 2015 directing Edwards, Hawkins and Specialist Cars to turn over the eight cars. On the court appointed date for return of the cars, Carl claims Edwards and Hawkins appeared in court and both averred all eight cars were stolen the day prior by "burly men." In his complaint, Plaintiff avers Edwards "removed" the vehicles from Specialist's premises before October 13, 2015. The Porsches were subsequently recovered by authorities in Spain and the United Kingdom, but as of the time Plaintiff's complaint was drafted, were not in his possession.

Between May and October 2015, while all the above was transpiring, Thomas and Edwards were attempting to engineer a sale of the subject Lightweight and Touring Porsches to a client of Thomas. When Edwards became troubled by the slow pace of negotiations and the reticence of Thomas' putative buyer, he pressed Thomas for consummation of the sale. In an apparent attempt to assuage Edwards' concerns about the seriousness of his buyer, Thomas persuaded Kramer to send an email to Edwards on August 28, 2015 which stated, among other things:

"To whom it may concern: The undersigned attorney hereby confirms that he had received EUR 1.4 million to be held for Thomas Hamann toward the purchase of a Porsche Carrera 2.7 Touring and a Porsche Carrera 2.7RS Lightweight subject to Buyer's satisfactory inspection. Payment shall be made upon the conclusion of satisfactory inspection of said cars. The price is ex their current location in the U.K. George Kramer Attorney-at-Law."

It is undisputed that Kramer's statement in the email about receipt of the funds was false. Kramer was, in fact, only in possession of a check from Thomas for the stated amount which was knowingly drawn on insufficient funds. It is also agreed that this email was never forwarded to Plaintiff. Despite the actions of Thomas and Edwards, the sale was never completed.

In his complaint, Plaintiff asserts Kramer's email was used to his "detriment" in two fashions. First, Plaintiff alleges that because the Bury loan to Edwards was in default, an "associate of Edwards" presented the email to Bury in August 2015 as proof of an imminent sale of the Touring Porsche. Plaintiff avers Bury retained the vehicle rather than selling it to satisfy the delinquent debt. As a result, Plaintiff claims had Bury attempted to sell the Touring Porsche it would have learned Plaintiff was the owner and returned the car to him or that Plaintiff would have learned of the vehicle's location from its advertisement for sale.

157289/2018 CARL, BERNARD vs. HAMANN, THOMAS
Motion No. 001

Page 2 of 5

2 of 5

Plaintiff pleads the Kramer email was used a second time as follows: Plaintiff states he contacted Specialist in September 2015 and demanded the return of the Touring and Lightweight Porsches. Return of the vehicles was refused because Specialist claimed it was in "negotiations" to sell both vehicles. Later, Plaintiff claims Specialist "identified Edwards as the source of its . . . understanding that a sale of Plaintiff Carl's Porsche Touring and Porsche Lightweight had been agreed". Plaintiff claims, upon information and belief, that Kramer's "email was the basis for Edward's false representations to [Specialist] that Plaintiff Carl's Porsche Touring and Porsche Lightweight had been sold, hence were no longer available for redelivery to Plaintiff Carl."

Concurrently with the above transactions, Edwards apparently contacted Thomas and told him because of cash flow problems Plaintiff needed a short-term of loan $150,000.00 to fulfil a loan payment to Ferrari Motor Services. Based upon his own liquidity issues, Thomas persuaded Maria to forward the funds to Ferrari Motor Services. Plaintiff claims he was led by Edwards to believe the $150,000.00 was a down payment on the sale of a Lamborghini held on consignment with Hawkins. When Thomas and Maria sought repayment of the funds, Plaintiff refused.

As a result of this disputed transaction, Thomas and Maria commenced an action in Connecticut state court against Plaintiff alleging three causes of action: unjust enrichment, breach of contract and a statutory theft claim. Plaintiff pleaded three "special defenses": unclean hands, statute of frauds and equitable estoppel. After a bench trial was concluded in the matter, Thomas withdrew his complaint and Plaintiff withdrew all his defenses but unclean hands. In its decision after trial, the court accepted the argument Maria loaned the funds to Plaintiff and found for her on the unjust enrichment and statutory theft claims. In rejecting Plaintiff's unclean hands defense, the court reasoned that "there was no evidence that [Plaintiff] relied upon and misrepresentations in the Kramer e-mail or that he suffered any harm of any sort as a result of it" and any misconduct in Thomas or Kramer's attempted purchase of the Touring or Lightweight Porsches was not connected in any way to Maria's loan to Plaintiff.

Kramer moves to dismiss the Plaintiff's fourth cause of action, the only cause of action asserted against him, titled "Tortious Interference with, and Trespass to, Chattels . . ." for failure to state a claim. Kramer also argues the court lacks personal jurisdiction and that the cause of action is barred by collateral estoppel.

<u>Discussion</u>

The doctrine of collateral estoppel prevents a party from relitigating an issue that was "raised, necessarily decided and material in the first action", provided the party had a full and fair opportunity to litigate the issue (*see Parker v Blauvelt Volunteer Fire Co.,* 93 NY2d 343, 349 [1999]; *Ryan v New York Tel Co.,* 62 NY2d 494, 500 [1984]; *Sclafani v Story Book Homes, Inc.,* 294 AD2d 559 [2d Dept 2002]). The doctrine is an equitable defense "grounded in the facts and realities of a particular litigation, rather than rigid rules" (*Buechel v Bain,* 97 NY2d 295, 303 [2001]). "[T]he burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests on the opponent to establish the absence of a full and fair opportunity to litigate the issue in [the] prior action or proceeding" (*Ryan v New York Tel Co.,* supra at 501). Kramer has failed to establish either element of his burden. As to identicality, the issue advanced by Plaintiff before the Connecticut court was an equitable defense of unclean hands and this court is presented with the intentional tort of tortious interference/trespass to chattels. Further, the transaction with the two Porsches and Kramer's email,

157289/2018  CARL, BERNARD vs. HAMANN, THOMAS
Motion No. 001

Page 3 of 5

3 of 5

which are the fundamental in this action, were determined to be unrelated to the loan transaction tried in Connecticut. Thus, the issue of decisiveness is also not demonstrated.

On a motion to dismiss for failure to state a cause of action pursuant to CPLR §3211[a][7], the allegations contained in the complaint must be presumed to be true and liberally construed (*Palazzolo v Herrick, Feinstein, LLP*, 298 AD2d 372 [2d Dept 2002]; *Schulman v Chase Manhattan Bank*, 268 AD2d 174 [2d Dept 2000]). In determining such a motion, "the sole criterion is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law" (*Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]).

In certain situations, however, the presumption falls away when bare legal conclusions and factual claims contained in the complaint are flatly contradicted by evidence submitted by the defendant (see *Guggenheimer*, supra; *Kantrowitz & Goldhamer, P.C. v Geller*, 265 AD2d 529 [2d Dept 1999]; *Meyer v Guinta*, 262 AD2d 463 [2d Dept 1999]). When in the uncommon circumstance the evidence reaches this threshold (see *Lawrence v Miller*, 11 NY3d 588, 595 [2008]), the court "must determine whether the proponent of the pleading has a cause of action, not whether she has stated one" (*Kantrowitz & Goldhamer, P.C. v Geller*, supra; *see also Rovello v Orofino Realty Co.*, 40 NY2d 633, 635-636 [1976]). Stated differently, "[w]here the facts are not in dispute, the mere iteration of a cause of action is insufficient to sustain a complaint where such facts demonstrate the absence of a viable cause of action" (*Allen v Gordon*, 86 AD2d 514, 515 [1st Dept 1982]).

A motion to dismiss pursuant to CPLR §3211[a][1] may only be granted where "documentary evidence" submitted decisively refutes plaintiff's allegations (*AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 5 NY3d 582, 590-91 [2005]) or "conclusively establishes a defense to the asserted claims as a matter of law" (*Held v Kaufman*, 91 NY2d 425, 430-431 [1998]; *see also Beal Sav. Bank v Sommer*, 8 NY3d 318, 324 [2007]). The scope of evidence that is statutorily "documentary" is exceedingly narrow and "[m]ost evidence" does not qualify (see Higgitt, *CPLR 3211[a][1] and [7] Dismissal Motions—Pitfalls and Pointers,* 83 New York State Bar Journal 32, 34-35 [2011]).

A cause of action of tortious interference/trespass to chattels is a rarely pled claim which is defined as follows: "A person who, without justification or consent, intentionally physically interferes with the use and enjoyment of personal property in the possession of another commits a trespass and is liable for any damage caused by that conduct" (PJI 3:9; *see also Jackie's Enters., Inc. v Belleville*, 165 AD3d 1567, 1572 [3d Dept 2018]; *American Stevedoring, Inc. v Red Hook Container Terminal, LLC*, Misc3d ___, 2014 NY Misc. LEXIS 4156 [Sup Ct, NY Cty 2014]). In civil claims, intent means an act is done with the purpose of accomplishing a result or with knowledge that to a "substantial certainty" such a result will ensue (*see Acevedo v Consolidated Edison Co.*, 189 AD2d 497, 501 [1st Dept 1993]; *McGroarty v Great American Ins. Co.*, 43 AD2d 368 [2d Dept 1974]). In other words, "the conduct must be engaged in with the desire to bring about the consequences of the act. A mere knowledge and appreciation of a risk is not the same as the intent to cause injury" (*Finch v. Swingly*, 42 AD2d 1035 [4th Dept 1973]). Concerning the intent of a trespasser, the actor "must intend the act which amounts to or produces the unlawful invasion, and the intrusion must at least be the immediate or inevitable consequence of what he willfully does, or which he does so negligently as to amount to willfulness." (*Phillips v Sun Oil Co.*, 307 NY 328, 331 [1954]; *see also Buckeye Pipeline Co. v Congel-Hazard, Inc.*, 41 AD2d 590 [4th Dept 1973]).

Here, Plaintiff asserts a physical interference with chattels occurred, but admittedly it was perpetrated by Edwards and others, not by Kramer (*cf. Jackie's Enters., Inc. v Belleville*, 165 AD3d 1567

**157289/2018 CARL, BERNARD vs. HAMANN, THOMAS**
**Motion No. 001**

Page 4 of 5

4 of 5

[3d Dept 2018]); *Matter of New York Landmarks Conservancy, Inc. v 375 Park Ave. Fee, LLC,* Misc3d ___, 2014 NY Misc. LEXIS 1564 [Sup Ct NY Cty 2014]). Despite the false representations made by Kramer in the email about his possession of funds from Thomas' buyer, there are no facts or allegations to support that Kramer willfully or intentionally issued the email with the aim of interfering with Plaintiff's vehicles. Indeed, the purpose of the message, which was not sent by Plaintiff before the vehicles disappeared, was to persuade Edwards a sale of the vehicles was imminent. Throughout the complaint Plaintiff alleges Kramer's issuance of the email was "negligent" and "reckless". The consequences of Kramer's act are couched as being "proximately caused" or the "foreseeable" result thereof. These are allegations that support a claim of simple negligence, not an intentional tort. That Kramer knew or should have known that his email could affect actions by others like Bury or Specialist is plainly speculative and insufficient in a cause of action where a tortfeasor must be substantially certain of the results of their intentional acts.

Even if it were claimed Kramer perpetrated a physical interreference with the subject vehicles, a cause of action for trespass to chattels would still fail since where, as here, the plaintiff is entirely denied possession, the claim becomes one of conversion (*see Colavito v New York Organ Donor Network, Inc.,* 8 NY3d 43, 49-50 [2006]; *Sporn v MCA Records,* 58 NY2d 482, 487 [1983]).

Accordingly, the branch of the motion to dismiss Plaintiff's fourth cause of action is granted and the complaint is dismissed as to Defendant Kramer only. The branch of the motion to dismiss the complaint for lack of personal jurisdiction is denied as moot.

| 8/14/2019 | | |
|---|---|---|
| DATE | | |

FRANCIS A. KAHN, III A.J.S.C.

HON. FRANCIS A. KAHN III
J.S.C.

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|
| | ☒ GRANTED | ☐ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

157289/2018  CARL, BERNARD vs. HAMANN, THOMAS
Motion No. 001

Page 5 of 5

5 of 5