UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N Y

☆   APR 2 9 2020   ☆

LONG ISLAND OFFICE

----------------------------------------------------------X

BERNARD CARL,

                 Plaintiff,

        -against-

THOMAS HAMANN,

                Defendant.

----------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER
2:16-cv-03863 (ADS)(AKT)**

<u>**APPEARANCES:**</u>

**Silverberg, P.C.**
*Attorneys for the Plaintiff*
320 Carleton Avenue Suite 6400
Central Islip, NY 11722
      By:    Karl J. Silverberg, Esq., Of Counsel.

**Law Office of George W. Kramer**
*Attorneys for the Defendant*
30 Clemens Court
Rocky Hill, CT 06067
      By:    George W. Kramer, Esq., Of Counsel.

**SPATT, District Judge:**

      On July 12, 2016, plaintiff Bernard Carl (the "Plaintiff") brought this action against Richard Edwards ("Edwards"), John Hawkins ("Hawkins"), Specialist Cars of Malton Limited, Graeme Scholes ("Scholes"), Left Hand Drive Ltd., Paul Sweeney ("Sweeney"), PHS Consultants, Andrew Howarth ("Howarth"), Christopher Williams ("Williams"), Trevor Smith ("Smith"), Foos China Trading, Vikash Limbani ("Limbani"), Landmark Car Co., Jeffrey Pattinson ("Pattinson"), and Thomas Hamann asserting violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.SC. § 1961, *et seq*. ("RICO") and common law claims for civil conspiracy, fraudulent

misrepresentation, fraud, trespass to chattel, unjust enrichment, and accounting. The allegations centered around the theft by Edwards of millions of dollars' worth of vehicles from the Plaintiff.

On April 9, 2018, the Plaintiff voluntarily dismissed the claims against all defendants other than Thomas Hamann (the "Defendant").

On October 25, 2019, the Plaintiff filed an Amended Complaint asserting only two causes of action against the Defendant, one for trespass to chattels and one for violating the RICO statute through a pattern of wire fraud predicate acts.

Presently before the Court are motions by the Defendant to dismiss the Amended Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P" or "Rule") 12(b)(6), and for summary judgment, pursuant to Rule 56. For the following reasons, the Court grants the Defendant's motion to dismiss in its entirety and dismisses the Amended Complaint with prejudice. Accordingly, the Court denies the motion for summary judgment as moot.

## I. BACKGROUND

### A. THE FACTUAL BACKGROUND.

This case relates to several vintage automobiles that the Plaintiff purchased at the behest of Edwards. In the fall of 2013, the Plaintiff entered into a non-exclusive, fee-for-service, brokerage agreement with Edwards through which the Plaintiff would purchase and re-sell cars brought to his attention by Edwards in exchange for a fee tied to the profitability of the cars. Under the agreement, Edwards owned no interest or title in the cars and possessed no authority to make purchases or sales on the Plaintiff's behalf without the express approval of the Plaintiff. Between November 2013 and November 2014, the Plaintiff purchased approximately seventeen vintage automobiles on the recommendation of Edwards pursuant to this agreement, including an orange

1973 Porsche 2.7RS Touring (the "Porsche Touring") and a 1973 white Porsche 2.7RS Lightweight (the "Porsche Lightweight") (together, the "Porsche motorcars"). On October 12, 2015, Edwards stole eight of those cars and sold them on the black market for less than market value.

The Defendant is a vintage car dealer who attempted to purchase the Porsche motorcars for a client through Edwards between August 1, 2015 and October 15, 2015 (the "Negotiation Period"). In essence, the Plaintiff claims that the Defendant conspired with Edwards to facilitate Edwards' theft of the cars by delaying the Plaintiff's ability to recover the vehicles in a timely manner. Specifically, the Plaintiff asserts that the Defendant created false documents showing a buyer's readiness to acquire the Porsche motorcars that resulted in the entities holding the vehicles refusing to turn them over to the Plaintiff.

On August 28, 2015, George Kramer ("Kramer"), at the Defendant's request, sent the following email to Edwards:

> To whom it may concern: The undersigned attorney hereby confirms that he had received EUR 1.4 million to be held for Thomas Hamann toward the purchase of a Porsche Carrera 2.7 Touring and a Porsche Carrera 2.7RS Lightweight subject to Buyer's satisfactory inspection. Payment shall be made upon the conclusion of satisfactory Inspection of said cars. The price is ex their current location in the U.K. George Kramer Attorney-at-Law.

ECF 147 ¶ 8 (hereinafter the "Kramer email"). The Defendant testified in a related action filed in the State of Connecticut Superior Court for the Stamford/Norwalk Judicial District, *Hamann v. Carl*, No. 16-cv-6027515 (hereinafter the "Connecticut Action"), that he knew this email was false because neither Kramer nor the Defendant had the 1.4 million euros at the time, as the buyer had not yet committed to purchasing the Porsche motorcars. The Defendant also testified that the target of the email was the Plaintiff, because it was intended to be presented to the owner of the two cars.

On August 31, 2015, the Defendant received an email from Edwards that was to be forwarded to the Defendant's client, Andreas Pohl ("Pohl"). The email falsely stated that Edwards had known the Defendant for over 20 years, and that Edwards and the Defendant had "done tens of millions of dollars of deals" together, when they had done "zero dollars of deals[.]" At the same time, Edwards pressured the Defendant to move the sale of Porsche Motorcars forward.

On September 1, 2015, the Defendant sent another email to Pohl stating: "I will send [the owner of the cars] from my money today a deposit, a fully refundable deposit in the amount of 200,000 because I don't want to lose my faith and jeopardize a long business relationship and friendship." ECF 147 ¶ 16 (hereinafter the "Pohl email"). The Defendant testified in the Connecticut Action that he knew that he would not use his own money and instead would get the money from elsewhere. The Defendant admitted that he was misleading Pohl in an attempt to push him to move forward with the transaction, but that Pohl was not ready to do so until the cars passed inspection.

The Plaintiff alleges that the Kramer email was used to his detriment with two audiences: Bury Leasing Ltd. ("Bury") and Specialist Cars Malton ("SCM").

1. **Bury.**

During the Negotiation Period, the Plaintiff believed the Porsche motorcars were being held for his account by SCM, who he had repeatedly demanded to return the cars to his possession. Unbeknownst to the Plaintiff, the Porsche Touring was actually being held by another lender, Bury, as collateral for a loan taken out by an associate of Edwards based on misrepresentations as to its ownership.

On or about August 29, 2015, a copy of the Kramer email was presented to Bury by an associate of Edwards, to serve as evidence of the impending sale of the Porsche Touring. At that

time, the loan secured by Porsche Touring was seriously in default and Bury was threatening to liquidate its collateral, *i.e.*, to sell the Porsche Touring and use the funds to repay the loan.

After receiving the Kramer email, Bury chose to defer any such liquidation and to retain possession of the Porsche Touring until mid-October 2015. The Plaintiff believes that had Bury chosen to liquidate the Porsche Touring, he would have recovered the car either through Bury learning the Car's true ownership or by his discovery of the advertisement of the car for sale.

## 2. SCM.

On September 14, 2015, in response to the Plaintiff's repeated demands for the return of several of his cars, SCM advised the Plaintiff that it would not return either of his Porsche motorcars because it was in negotiation to sell the vehicles.

On September 16, 2015, SCM reported to the Plaintiff that neither car was available to be returned because it agreed to sell the Porsche Touring for £570,000 and the Porsche Lightweight for £700,000.

Bury returned the Porsche Touring to SCM on or about October 12, 2015. The next day, the Plaintiff obtained an order from a court in the United Kingdom requiring SCM to return possession of the Porsche motorcars to the Plaintiff. However, before the Plaintiff could enforce the order, Edwards removed the Porsche motorcars from SCM's premises and put them beyond the Plaintiff's reach.

SCM subsequently identified Edwards as the source of its early September 2015 understanding that an agreement to purchase the Porsche motorcars existed. The Plaintiff believes that the Kramer email was the basis for Edwards's false representations to SCM. Thus, the Plaintiff contends that the Defendant proximately caused the loss of the Porsche motorcars by materially

delaying his efforts to recover them. The Plaintiff believes that these delays enabled Edwards to steal the Porsche motorcars from SCM before he could retrieve them.

## B. PROCEDURAL BACKGROUND.

On July 12, 2016, the Plaintiff filed a complaint against the Defendant, Edwards, and several other individuals, asserting violations of the RICO statute and common law claims for civil conspiracy, fraudulent misrepresentation, fraud, trespass to chattel, unjust enrichment, and accounting.

On November 17, 2017, the Defendant moved, pursuant to Rules 12(b)(6) and 56, for dismissal of this case due to the Plaintiff's failure to state a claim.

On December 15, 2017, the Court denied the Defendant's motion without prejudice for failure to comply with the Court's Individual Rules requiring the exchange of Rule 56.1 statements and requesting a pre-motion conference with the Court prior to initiating summary judgment motion practice.

On March 20, 2018, the Court held a pre-motion conference in which it authorized the Defendant to move for summary judgment.

On April 9, 2018, the Plaintiff voluntarily dismissed the claims against all defendants other than the Defendant.

On August 27, 2018, the Defendant filed a motion for summary judgment pursuant to Rule 56. However, the memorandum of support filed in conjunction with the Defendant's motion also referenced the standard for a Rule 12(b)(6) motion for failure to state a claim, and argued throughout that the Complaint failed to state a claim.

On September 20, 2018, the Plaintiff filed a motion to stay the Court's consideration of the motion for summary judgment in contemplation of his desire to pursue voluntary dismissal of the action pursuant to Rule 41(a)(2).

On November 5, 2018, the Plaintiff withdrew this request, explaining that he instead intended to seek leave to file an amended complaint asserting new factual claims and causes of action against the Defendant.

On December 31, 2018 the Plaintiff filled a motion for leave to file an amended complaint that restated the Complaint's claims for trespass to chattel and violation of the RICO statute, and including additional causes of action for common law contribution, common law indemnification, negligence, and violations of the Connecticut Unfair Trade Practice Act ("CUTPA"). Conversely, the proposed amended complaint removed the Complaint's claims for conspiracy to violate RICO, civil conspiracy, fraudulent misrepresentation, fraud, unjust enrichment and accounting.

On September 24, 2019, the Court granted, in part, and denied, in part, the Plaintiff's motion for leave to amend. Specifically, the Court permitted the proposed amendments regarding the RICO and trespass to chattel claims, but rejected the remaining proposed amendments as futile. As part of the order, the Court refused to consider arguments that the proposed amended complaint failed to state a claim for a RICO violation, because the Defendant had yet to move to dismiss that claim in the original complaint and had a pending motion for summary judgment.

On October 25, 2019, the Plaintiff filed an Amended Complaint asserting only two causes of action against the Defendant, one for trespass to chattels and one for violating the RICO statute through a pattern of wire fraud predicate acts.

On January 14, 2020, in light of apparent deficiencies in the Amended Complaint, and the

Defendant's repeated reference to the motion to dismiss standard in his motion for summary

judgment, the Court issued the following order:

> No later than 30 days from the issuance of this order, the parties are directed to
> submit the following supplemental briefings regarding the Defendant's motion for
> summary judgment: (1) the Plaintiff must explain why there is a genuine dispute of
> material fact regarding whether the Defendant engaged in a "pattern" of
> racketeering activity, see Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187
> F.3d 229, 242 (2d Cir.1999), including an affidavit explaining what additional
> discovery is necessary to establish that element of his civil RICO claim, see Gurary
> v. Winehouse, 190 F.3d 37, 4344 (2d Cir. 1999); (2) the Defendant must submit
> summary judgment briefing regarding the Plaintiff's trespass to chattel claim; and
> (3) if the Defendant intends for his motion to be considered a motion to dismiss for
> failure to state a claim, pursuant to Rule 12, he must submit a revised notice of
> motion. Each party will be permitted 14 days to respond to the other party's
> submission.

January 14, 2020 Electronic Order.

As of April 2, 2020, the parties have fully complied with the order and fully briefed the

pertinent issues in the motions to dismiss and for summary judgment.

## II. DISCUSSION

### A. THE LEGAL STANDARD.

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the

factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of

the plaintiff. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw*

*Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d

Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the now well-established *Twombly* standard, a complaint should be dismissed only

if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929

(2007). The Second Circuit has explained that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

Fed. R. Civ. P. 56(a) provides that a court may grant summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

"A genuine issue of fact means that 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "The evidence of the party opposing summary judgment is 'to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Wright*, 554 F.3d at 266 (parenthetically quoting *Graham*

*v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). However, to defeat a motion for summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).

"When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## B. AS TO THE PLAINTIFF'S RICO CLAIM.

The RICO statute provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). "In order to bring suit under § 1964(c), a plaintiff must plead (1) the defendant's violation of 18 U.S.C. § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir.2006). Section 1962 provides in relevant part, "[it] shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

In order to prevail on a RICO claim, the plaintiff must establish "seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign

10

commerce." *Hinterberger v. Catholic Health Sys., Inc.*, 536 Fed.Appx. 14, 16 (2d Cir.2013) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 16–17 (2d Cir.1983)).

A RICO pattern is established by showing that the predicate acts relied upon are "'related, and that they amount to or pose a threat of continued criminal activity.'" *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999) (quoting, *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (emphasis in original)). When seeking to satisfy the continuity requirement, a plaintiff must show that the defendants' activities were "neither isolated or sporadic." *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 467 (2d Cir.1995).

The Court finds, notwithstanding the Plaintiff's supplemental briefing, that his RICO claim fails as a matter of law because he cannot establish that the predicate acts alleged constituted a pattern. The Plaintiff relies solely two predicate acts: first, the Defendant instructed his attorney to send the Kramer email to Edwards; and second, the Defendant sent the Pohl email to his client. ECF 158 at 15. Assuming those actions constituted wire fraud, there is no conceivable basis under which they could be found sufficiently continuous to be considered a pattern.

Essentially, the Plaintiff's claim is based on the fallout of a single failed transaction, in pursuit of which the Defendant sent two emails, all occurring on the same week. This is exactly the sort of isolated conduct beyond the reach of the civil RICO statute. *See SMS Mktg. & Telecommunications, Inc. v. H.G. Telecom, Inc.*, 949 F. Supp. 134, 144 (E.D.N.Y. 1996) (finding complaint failed to allege pattern of racketeering based on a "a single scheme that extended for less than a year and which involved one alleged corporate perpetrator, one corporate victim, and an uncomplicated transaction essentially relating to a simple breach of contract"); *Passini v. Falke–Gruppe*, 745 F.Supp. 991, 993 (S.D.N.Y. 1990) (complaint alleging single scheme, single

victim, single perpetrator and a business deal gone sour was no more than a straightforward breach of contract claim).

The element of continuity may be satisfied by a showing of either "open ended continuity" or "closed ended continuity." *H.J., Inc.*, 492 U.S. at 241–42, 109 S.Ct. 2893; *Cofacredit*, 187 F.3d at 242. As the Court will explain, the Amended Complaint fails to allege continuity under either definition.

### 1. As to Open-Ended Continuity.

Open-ended continuity exists "even if the predicate acts were not engaged in over an extended period of time. Instead, there must be a threat of continuing criminal activity 'extending indefinitely into the future.'" *SKS Constructors, Inc. v. Drinkwine*, 458 F.Supp.2d 68, 79–80 (E.D.N.Y. 2006) (quoting *H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. at 2901). "In assessing whether or not the plaintiff has shown open-ended continuity, the nature of the RICO enterprise and of the predicate acts are relevant." *Cofacredit*, 187 F.3d at 242. When an enterprise engages in legitimate business activities, as opposed to an organization that solely exists for criminal purposes, "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Id.* at 243; *see also GICC Capital Corp.*, 67 F.3d at 466.

It is undisputed that the Defendant is engaged in the legitimate business of brokering vintage car sales. Nor is he alleged to engaged in organized crime on a continuing basis. As a result, two mere alleged instances of wire fraud are insufficient to establish open-ended continuity. *See Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 407 (S.D.N.Y. 2013) (finding plaintiff could not establish open-ended continuity against defendant whose principal business was selling, buying, and reselling jeweler and watches because "four fraudulent

transactions are an insufficient basis on which to assert that MIT's business model is based on selling fraudulent watches"); *Greenman-Perdesen, Inc. v. Berryman & Henigar, Inc.*, No. 09-cv-0167, 2009 WL 2523887, at *7 (S.D.N.Y. Aug. 18, 2009) ("A series of alleged misrepresentations during a four-month period does not constitute a pattern of racketeering activity that extended over a substantial period of time.").

In addition, the Defendant's allegedly fraudulent practices are not analogous to the sort of inherently unlawful activity, such as murder or kidnapping, which courts traditionally consider racketeering acts even though they occurred over a short period of time. *See United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995) (nature of activity itself provides requisite threat of continuity in the case of "inherently unlawful" acts such as murder or obstruction of justice, in pursuit of "inherently unlawful goals" such as narcotics trafficking or embezzlement, but "in cases concerning alleged racketeering activity in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property, the courts generally have found no threat of continuing criminal activity arising from conduct that extended over even longer periods"); *FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F.Supp.2d 362, 370–71 (E.D.N.Y. 2002) (a onetime allegedly false statement under a negotiated letter of credit is not inherently unlawful); *Econ. Opportunity Comm'n v. Cnty. of Nassau*, 47 F.Supp.2d 353, 366–67 (E.D.N.Y. 1999) (alleged mail fraud, wire fraud and Hobbs Act predicates are not inherently unlawful) (Spatt, J.); *Kalimantano GmbH*, 939 F. Supp. 2d at 408 ("MIT's alleged fraudulent practices in the marketing of luxury watches do not imply a threat of continuing criminal activity over time."); *Skylon Corp. v. Guilford Mills*, Inc., No. 93-cv-5581, 1997 WL 88894, at *6 (S.D.N.Y. Mar. 3, 1997) (plaintiff's allegations of verbal and written misrepresentations made over the telephone and in letters are not inherently unlawful, but rather "run-of-the-mill fraud"); *Pier Connection, Inc. v. Lakhani*, 907 F.Supp. 72,

77 (S.D.N.Y. 1995) (open-ended continuity element not satisfied where plaintiff alleged no facts that would allow the Court to infer more than a "single fraudulent scheme"); *Polycast Tech. Corp. v. Uniroyal, Inc.*, 792 F.Supp. 244, 264 (S.D.N.Y. 1992) (fraudulent sale by a company of its wholly-owned subsidiary, involving alleged violation of securities laws and multiple defendants, characterized as a "one-shot, non-recurring deal" and does not establish open-ended continuity).

Bolstering this conclusion, the predicate acts here appear inherently terminable. The Defendant's actions relate to the sale of two cars, with only one true victim. Once Edwards absconded with the Plaintiff's vehicles, the scheme ended. *See Gee Chan Choi v. Jeong-Wha Kim*, No. 04-cv-4693, 2006 WL 3535931, at *8 (E.D.N.Y. Dec. 7, 2006) ("Plaintiff contends that defendants intended to extort money from plaintiff by falsely accusing him of a crime in the hopes that he would settle the claim with defendant Kim. Thus, once Ms. Kim falsely accused Choi, the scheme was essentially concluded."); *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 445 (S.D.N.Y. 2019) ("[T]he alleged unlawful activity, the hack and theft the DNC's documents, do not include a future threat of repetition -- those alleged crimes were terminal in nature."); *Kalimantano GmbH*, 939 F. Supp. 2d at 408–09 (explaining that "given the intermittent nature of the fraudulent episodes alleged relative to MIT's eight years of existence," four acts of wire fraud "portray[ed] at most 'isolated or sporadic' fraudulent conduct in the context of the sale of property—acts which, if true, were condemnable, but which do not constitute the 'long-term criminal conduct' Congress had in mind in enacting the RICO statute."); *Wilson Impex PTE Ltd. v. Am. Polymer Grp., Inc.*, No. 97-cv-4157, 1999 WL 993695, at *3 (S.D.N.Y. Nov. 2, 1999) (finding wire fraud occurring during negotiations over two-month period were "inherently terminable" as the scheme "necessarily came to an end when they disappeared shortly after they obtained the money from the letters of credit"); *Foster v. 2001 Real Estate*, No. 14-cv-9434, 2015

WL 7587360, at *5 (S.D.N.Y. Nov. 24, 2015) (finding plaintiff failed to establish open-ended continuity where there were "no allegations or evidence of racketeering outside of the events concerning the sale of the Bronx properties").

Therefore, the Court finds that the Amended Complaint fails to allege open-ended continuity as a matter of law.

### 2. As to Closed-Ended Continuity.

"To satisfy closed-ended continuity, the plaintiff must prove a series of related predicates extending over a substantial period of time." *Cofacredit*, 187 F.3d at 242; *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008). Although there are a variety of non-dispositive factors relevant to the inquiry of whether closed-ended continuity exists, including "the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes," *GICC Capital Corp.*, 67 F.3d at 467, "closed-ended continuity is primarily a temporal concept," *Cofacredit*, 187 F.3d at 242.

Two acts within three days of each other fall insurmountably short, both in terms of the number of acts and the period of time, of establishing closed-ended continuity. *See New York Transp., Inc. v. Naples Transp., Inc.*, 116 F. Supp. 2d 382, 388 (E.D.N.Y. 2000) ("Predicate acts extending over a few weeks or months do not satisfy the requirement for closed-ended continuity."); *Airlines Reporting Corp. v. Aero Voyagers, Inc.*, 721 F. Supp. 579, 584 (S.D.N.Y. 1989) ("[T]here is insufficient threat of continuity to support a RICO cause of action where the racketeering acts involved a brief period of time.") (collecting cases). Indeed, the Second Circuit has noted that it has never held a period of less than two years of activity sufficient to satisfy the closed ended continuity requirement. *See DeFalco v. Bernas*, 244 F.3d 286, 321 (2d Cir. 2001).

Therefore, the Court finds that the Amended Complaint fails to allege closed-ended continuity as a matter of law. Accordingly, the Court need not address the other elements of a substantive RICO claim because, without adequately pleading continuity element, the Plaintiff cannot state a claim. *FD Prop. Holding, Inc.*, 206 F. Supp. 2d at 373; *Econ. Opportunity Comm'n of Nassau Cty.*, 47 F. Supp. 2d at 367.

## C. AS TO THE PLAINTIFF'S TRESPASS TO CHATTEL CLAIM.

To prove a claim for trespass to chattels, a plaintiff must "establish that [the] defendant[] 'intentionally, and without justification or consent, physically interfered with the use and enjoyment of personal property in [plaintiff's] possession,' and that plaintiff[] [was] thereby harmed." *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) (quoting *School of Visual Arts v. Kuprewicz*, 3 Misc.3d 278, 771 N.Y.S.2d 804, 807 (N.Y.Sup.Ct.2003)).

Here, the Plaintiff only alleges that the Defendant sent two emails. According to the Plaintiff, the actual physical theft of the Porsche motorcars was undertaken by Edwards, not the Defendant. Moreover, the parties with physical control over the Porsche motorcars when they were stolen were Bury and SCM. While the Defendant's behavior may have indirectly delayed the Plaintiff's efforts to recover the vehicles, that fact alone fails as matter of law to establish trespass to chattel because the Defendant never physically interfered with his property. *Cf. Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, 713 F. Supp. 2d 215, 231 (S.D.N.Y. 2010) ("As an initial matter, the plaintiffs have failed to state a claim for conversion or trespass to chattels because the defendants never assumed 'physical control' over the intellectual property."); *Manchanda v. Google*, No. 16-CV-3350 (JPO), 2016 WL 6806250, at *6 (S.D.N.Y. Nov. 16, 2016) ("Manchanda has not provided the Court with a clear theory under which trespass to chattels could have occurred.

He has not alleged that Defendants had possession of any of his personal property or that any such property was impaired. Absent any such allegations, he fails to state a claim for unlawful trespass.").

The Plaintiff seeks leave to amend this cause of action to one alleging conversion. Such an amendment would be futile. The Plaintiff cannot allege that the Defendant "exercised an unauthorized dominion over the thing in question," because he was never in physical possession of the Porsche motorcars. *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 524 (S.D.N.Y. 2017).

It appears that the Plaintiff actually intends to allege that the Defendant conspired with Edwards regarding the theft the Porsche motorcars. ECF 158 at 17 ("The issue in the case is the extent of Hamann's potential conspiracy with Richard Edwards. . . . The extent to which Hamann and Edwards had intended from the outset to utilize those emails to convince Specialist Cars of Malton to not give Carl back his cars and to buy time for Edwards to steal those cars is what discovery will reveal.").

However, "[i]t is well established that civil conspiracy is not an independent tort under New York law. The charge of conspiracy is merely the string which serves to connect defendants to the actionable wrong and the overt acts which caused injury." *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1267 n.8 (S.D.N.Y. 1991); *see also Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 245 (S.D.N.Y. 2018) ("It is textbook law that New York does not recognize an independent tort of conspiracy. If an underlying, actionable tort is established, however, [the] plaintiff[s] may plead the existence of a conspiracy in order to demonstrate that each defendant's conduct was part of a common scheme."). Therefore, the Defendant cannot be held liable in this suit for any alleged conspiracy with Edwards because the

Plaintiff voluntarily dismissed his claims against Edwards, so that there is no primary liability to which to attach secondary liability to the Defendant.

Therefore, the Court finds the Plaintiff's trespass to chattel claim fails as a matter of law.

**D. AS TO THE PLAINTIFF'S DESIRE FOR ADDITIONAL DISCOVERY.**

The current procedural posture of the case is unusual due to the fact that the Defendant presented a motion for summary judgment that, in fact, was a motion to dismiss arguing that the allegations in the Complaint failed to state a claim. Thus, pursuant to the Court's order, the Plaintiff furnished an affidavit requesting additional discovery in support of his claims. However, the Defendant has since amended the notice of motion to also invoke Rule 12(b)(6), which the Court now finds meritorious. Accordingly, the Plaintiff is not entitled to such discovery because the Amended Complaint fails to state a claim. *Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 567 (2d Cir. 2016) ("A plaintiff who has failed adequately to state a claim is not entitled to discovery."); *see also Ashcroft*, 556 U.S. at 686, 129 S.Ct. 1937 (holding that where complaint fails pleading requirements, plaintiff "is not entitled to discovery, cabined or otherwise"); *see also Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (stating that Fed.R.Civ.P. 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding").

Further, it is also apparent that any amendments to the Amended Complaint would be futile. The Plaintiff submitted an affidavit regarding additional facts he hopes to investigate in discovery, namely, the Defendant's use of $5,000 to finance a trip to Italy to purchase another luxury motorcar in "mid-2014"; pre-litigation correspondence from the Defendant regarding a loan from the Defendant's wife to the Plaintiff between September 2015 and January 2016; and

allegations that Edwards engaged in other fraudulent schemes to sell Porsche motorcars to which he was not an owner. ECF 159.

The first two allegations would still fail to state a claim because they describe the same isolated and sporadic activity which the Court has already found insufficient to establish a RICO pattern. The last allegation, regarding Edwards, also fails to remedy the inadequacy of the claims against the Defendant because "[t]he requirements of section 1962(c) must be established as to each individual defendant." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). Moreover, as to the trespass to chattel claim, none of these facts show that the Defendant ever physically interfered with the Porsche motorcars. Put simply, there is no basis for permitting the Plaintiff to continue this litigation, notwithstanding his desire for additional discovery.

Assuming the Court disregarded the motion to dismiss, the Plaintiff would still be unable to establish a genuine dispute of material fact for the same reasons. Moreover, he has not demonstrated an entitlement to deny summary judgment in favor of further discovery. Under Rule 56(f), summary judgment "may be inappropriate where the party opposing it shows ... that he cannot at the time present facts essential to justify his opposition." "Thus, . . . a party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing '(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.'" *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (quoting *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir.1995)).

In its entirety, the Plaintiff's affidavit contends that he needs additional discovery, specifically to depose the Defendant, to determine:

1. The nature of Hamann and Edwards' relationship, and the history of that relationship so as to establish for how long they were conspiring to steal cars – to determine a pattern of racketeering activity under the RICO statute; and,

2. The nature of Hamann and Edwards' enterprise to steal cars – to prove an enterprise under the RICO statute.

ECF 160 ¶ 2.

The Plaintiff provides no explanation why additional discovery would be reasonably likely to unearth additional RICO predicate acts. Moreover, document discovery has been completed for three years, ECF 148, and the Plaintiff deposed the Defendant twice in the Connecticut Action. ECF 131. Given the Plaintiff's inability to identify any more discernible predicate acts up to this point, his desire to depose the Defendant appears to be based on little more than a hope that he will unearth presently unknown misconduct that would save a claim that, as alleged, is legally futile.

However, Rule 56(f) does not allow "'fishing expedition[s]' in the hope that [a plaintiff] could come up with some tenable cause of action." *Waldron v. Cities Serv. Co.*, 361 F.2d 671, 673 (2d Cir. 1966). "[A] court can reject a request for discovery, even if properly and timely made through a Rule 56(f) affidavit, if it deems the request to be based on speculation as to what potentially could be discovered. . . . Litigants seeking relief under the rule must show that the material sought is . . . neither cumulative nor speculative, and a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56(f)." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir.1994).

Here, the Plaintiff fails to describe the information he expects to obtain through discovery with any specificity. His conclusory assertion that he needs more discovery to prove his case is insufficient. *See Lerwick v. Kelsey*, 150 F. App'x 62, 64–65 (2d Cir. 2005) (affirming district court's grant of summary judgment against plaintiff "failed to establish at least two predicate acts

that constitute a 'pattern of racketeering activity," even though the plaintiff desired additional discovery, because his "his remaining discovery requests appear[ed] to be more of a 'fishing expedition' than a good-faith effort to fill in evidentiary gaps"); *Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 285 (E.D.N.Y. 2010) (rejecting request for additional discovery where the plaintiff's "contention that taking depositions will prove that the Individual Defendants were personally involved in the alleged misconduct [was] purely speculative."); *Deluca v. Portland Orthopaedics Ltd.*, No. 15-cv-05562, 2017 WL 6001781, at *9 (E.D.N.Y. Dec. 2, 2017) (Spatt, J.) (finding request for additional discovery "unjustified due to its conclusory nature and the lack of detail required by the Second Circuit"); *Star Ins. Co. v. Hazardous Elimination Corp.*, No. 05-cv-4762, 2007 WL 316569, at *7 (E.D.N.Y. Jan. 30, 2007) ("Mere references to the lack of discovery are insufficient to satisfy this test.").

Therefore, the Court finds that the Plaintiff is not entitled to additional discovery.

### III. CONCLUSION.

For the foregoing reasons, the Court grants the Defendant's motion to dismiss pursuant to Rule 12(b)(6) and dismisses the Amended Complaint with prejudice. The Court denies the Defendant's motion for summary judgment as moot. The Clerk of the Court is respectfully directed to close the case.

It is **SO ORDERED:**

Dated: Central Islip, New York

April 2‡ 2020

/s/Arthur D. Spatt

ARTHUR D. SPATT
United States District Judge